**AL–CHARLES, INC.**

v.

**Stephen B. HEINTZ, Commissioner, State of Connecticut, Department of Income Maintenance.**

**Civ. No. H–85–293 (MJB).**

United States District Court, D. Connecticut.

Sept. 30, 1985.

David M. Lesser, Clendenen & Lesser, New Haven, Conn., Robert Erwin Silver, Newton Centre, Mass., for plaintiff.

Arnold Menchel, Asst. Atty. Gen., Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

BLUMENFELD, Senior District Judge.

Plaintiff is a Connecticut corporation doing business as an operator of a skilled nursing facility, which at all relevant times has had a contract with the defendant Commissioner of the Department of Income Maintenance of the State of Connecticut. Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendant has violated its rights under the due process and equal protection clauses of the fourteenth amendment to the United States Constitution as well as under Title XIX of the Social Security Act, 42 U.S.C. § 1396a *et seq.* The defendant has moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6). Defendant argues for dismissal on various grounds, including that the relief sought is barred by the eleventh amendment to the United States Constitution, and that the plaintiff does not have a federally protectable property interest in the rates of reimbursement that a state uses to pay operators of skilled nursing facilities.

Before addressing the legal questions raised by the motion to dismiss, it is helpful to review the factual background of this lawsuit. Although these facts were not put forth by the plaintiff in the pleadings, and are before the court on the basis of the defendant's memorandum and arguments presented by both sides in open court on August 19, 1985, this background is useful for putting the issues in perspective.

On or about October 26, 1982, Albert Lizzi, the owner of the plaintiff corporation, who is also the assistant administrator of the nursing home, was convicted of Medicaid fraud. On or about July 28, 1982 and October 26, 1982, Damon Lizzi, the son of the owner of the nursing home, who was also the administrator of the facility, was convicted on two counts, one for Medicaid fraud and one for larceny involving theft of patients' personal funds.

Pursuant to Conn.Gen.Stat. § 17–83k, the salaries of the Lizzis were disallowed following their Medicaid fraud convictions at the time said costs for the period following their convictions were reported in the ordinary course; *i.e.,* in the cost report for the cost year ended September 30, 1983, thereby affecting the July 1, 1984 rate.[1]

---

**1.** In accordance with the defendant's cost-related prospective rate system, the defendant pays long-term care facilities a per diem rate during a "rate year" which commences on July 1 of each year and ends on the following June 30.

The per diem rate for the "rate year" derives from cost information with respect to a facility's preceding "cost year," which commences on October 1 of each year and ends on the following September 30. Thus there is a nine-month lag

The rates paid to the nursing homes during the period October 26, 1982 through July 1, 1984 included payments for the Lizzis' salaries because those rates were based upon costs reported for periods prior to the convictions and resulting suspensions.

As a result of his convictions for Medicaid fraud and larceny of patients' personal funds, action has been taken against Damon Lizzi's license as an administrator by the Connecticut Department of Health Services.

The plaintiff hired an unconvicted licensed administrator on or about March 18, 1985. The cost of paying the unconvicted administrator will be included in the cost report for the year ended September 30, 1985 and will be reflected in the July 1, 1986 rate.

The Lizzis accepted the payments for the period between October 26, 1982 through July 1, 1984 which, due to the difference between cost years and rate years, included their salaries. As a result of the way the defendant's cost-related prospective rate system works the Lizzis must pay an unconvicted administrator for the period March 18, 1985 through July 1, 1986 before those costs are included in their rates. This time lag is due to the difference in cost years and rate years as used by the defendant in determining reimbursement rates pursuant to Conn.Gen.Stat. § 17–314.

In this action, the plaintiff is challenging in general terms the Connecticut cost-related reimbursement system and more specifically any and all of the numerous specific rate disallowances provided pursuant to state statutes and regulations, including the disallowance of the salaries of the owner and his son, who was the administrator of the nursing home, following their convictions for Medicaid fraud. The case is now before the court on defendant's motion to dismiss.

It is well settled that for purposes of a motion to dismiss the well pleaded material allegations of the complaint are taken as true. 2A *Moore's Federal Practice* ¶ 12.07[2.–5] (2d ed. 1985). However, it is for the court to decide if the allegations of fact in the complaint rise as a matter of law to the level of a cognizable claim for relief. Thus, any conclusory allegation in a complaint that a plaintiff has been denied some right in violation of federal law is subject to review by the court on a motion to dismiss. *Id.* If mere conclusory allegations of the denial of rights under the Constitution and laws of the United States were taken as true, the elaborate rules and procedures for bringing a motion to dismiss would be pointless. Accordingly, paragraphs 1 through 27 of the complaint which are primarily factual allegations, and which are the alleged factual basis for plaintiff's entitlement to relief, will be taken as true for purposes of ruling on this motion, to the extent that those paragraphs contain allegations of fact rather than conclusions of law. Counts I through IV of the complaint which allege the legal basis for relief will be tested against the defendant's arguments that either those counts fail to state claims upon which relief can be granted, or that this court lacks subject matter jurisdiction over the cause of action alleged.

The essential nature of the plaintiff's claim is that the defendant, in administering the Medical Assistance Program (known as "Medicaid") under Conn.Gen. Stat. § 17–314 (pursuant to which the defendant calculates rates to be paid to nursing home providers such as the plaintiff as reimbursement for their care for Medicaid beneficiaries), has determined the rates of reimbursement to the plaintiff in a manner which is violative of the due process and equal protection clauses of the fourteenth amendment, and Title XIX of the Social Security Act. Plaintiff contends that such violations are causing or have caused the plaintiff to suffer irreparable harm. Taking each of the plaintiff's alleged bases for

from the time that a facility's historical costs will be reflected in its rates of reimbursement. To illustrate, a facility's per diem rates for its

rate year July 1, 1982—June 30, 1983 would be based on cost information for the cost year October 1, 1980—September 30, 1981.

relief in Counts I through IV of the complaint, however, it is clear that each count either fails to state a claim upon which relief can be granted or that this court lacks subject matter jurisdiction over the claim.

### Count I

In Count I of the complaint the plaintiff alleges that the defendant's contracts with the plaintiff, its state plan, its regulations and representations, and Title XIX of the Social Security Act, singly and collectively, create a property interest for plaintiff in plaintiff's rates (referring to the rates of reimbursement determined by the state pursuant to Conn.Gen.Stat. § 17–314). Plaintiff contends that it has been deprived of this property interest by defendant without due process of law.

█ There are a number of grounds upon which Count I of the plaintiff's complaint must be dismissed. First, it has been specifically held that a Medicaid provider, such as the plaintiff, has no property interest in prospective reimbursement payments, nor does the provider have a protectable interest in a particular rate of reimbursement. *See Grossman v. Axelrod,* 646 F.2d 768, 770–71 (2d Cir.1981). Although the *Grossman* decision was based on a finding that under the law of New York there was no protectable property right, plaintiff here has failed to point out any authority under Connecticut law which would suggest that Connecticut law on this point is any different from New York law.

Even if the plaintiff did possess a property interest in the Title XIX provider reimbursement rates, the plaintiff was entitled to request an administrative hearing, with a subsequent right of appeal to the Connecticut Superior Court, if the plaintiff was aggrieved by an alleged failure of the defendant to hold certain audit and exit conferences or any other claim of aggrievement based on an alleged failure of the defendant. Such hearing, with the right to appeal, is provided for in Connecticut's Uniform Administrative Procedure Act (UAPA), Conn.Gen.Stat. § 4–166 *et seq.*

The plaintiff here makes no allegation whatsoever that it has attempted to avail itself of its right to a hearing on an issue of aggrievement under the UAPA.

█ The law of the Second Circuit, and of this district in particular, is clear that if a plaintiff chooses not to take part in a state provided administrative and judicial review procedure whose purpose is to afford him due process, he cannot later claim he was denied due process by the state. *See Aronson v. Hall,* 707 F.2d 693 (2d Cir.1983). The words of Judge Clarie of this court, in a recent case in which a long-term care facility instituted an action against the defendant here challenging the Connecticut reimbursement system for skilled nursing facilities as violation of state law and the federal Medicaid Act, are just as applicable here as they were in that case:

> Congress has shown an intent to dissuade Medicaid providers from bringing suits for monetary relief in federal court. Connecticut provides an administrative appeal process of which the plaintiff has not availed itself, despite the plaintiff's allegation that it has suffered under the state's reimbursement rate method *without remedy* for the years 1979–1982 inclusive. Section 17–314 of the Connecticut General Statutes provides the statutory authorization for the Commissioner of the DIM to set rates for long-term care facilities such as the plaintiff herein. Regulations promulgated pursuant to the Commissioner's authority to set reimbursement rates provided an appeal process for persons aggrieved by the rates determined pursuant to §§ 17–311—17–314 inclusive. Regulations of Connecticut State Agencies § 17–311–101 *et seq.,* Part IV, "Relating to Rules of Practice for the Arbitration of Items of Aggrievement on Rates Determined Pursuant to § 17–311 through § 17–314 as Amended by P.A. 77–574."
>
> Arden House has shown no evidence that it has resorted to the available state remedial process.... [H]ad the plaintiff pursued the state remedies available to

it, the issues the plaintiff now brings to the district court could have been properly considered and resolved. *Delaware Convalescent Center, Inc. v. Beal* [488 Pa. 292], 412 A.2d 514, 515 (1980). The plaintiff has prematurely brought its claims before this Court.

*Arden House, Inc. v. Heintz*, 612 F.Supp. 81, 85–86 (Ruling on Defendant's Motion to Dismiss, D.Conn.1985). In accordance with Judge Clarie's ruling in the *Arden House* case, even if the plaintiff here did have a protectable property interest which could not be deprived without due process of law, plaintiff's failure to show that it has resorted to the available state remedial process renders its due process claim before this court premature.

 A third reason that Count I must be dismissed is that to the extent it seeks monetary relief for any past alleged violations of due process, such retroactive monetary relief against the state is barred by the eleventh amendment.[2] *See Florida Department of Health v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Accordingly, Count I of the complaint must be dismissed.

### Count II

 Count II of plaintiff's complaint relates solely to the rates that are set by the state which the plaintiff may charge private, self-pay patients. The issue of rates for "self-pay" patients, however, is one that arises solely under state law. Therefore, no matter what plaintiff's grievance is under this count, a federal district court is without jurisdiction to hear it. Such a claim can no longer be entertained under the doctrine of pendent jurisdiction against a state defendant and is barred by the eleventh amendment. To the extent that Count II may be trying to seek some form of retroactive monetary relief, it is barred by the eleventh amendment under the doctrine of sovereign immunity as

enunciated in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). To the extent the second count of the complaint is seeking prospective injunctive relief to order state officials to conform their conduct to state law, it is also barred by the eleventh amendment under the doctrine of sovereign immunity as more recently enunciated by the Supreme Court in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 911–20, 79 L.Ed.2d 67 (1984). Accordingly, Count II of the complaint must be dismissed.

### Count III

In paragraph 32(a) of the complaint the plaintiff claims that the state defendant cannot "permissibly deny plaintiff reimbursement for costs expended [as salaries] for its administrators' participation in the Medicaid program prior to December 10, 1982." (The defendant notes in its memorandum that December 10, 1982 was the day following the plaintiff's administrators' sentencing for conviction for Medicare and Medicaid fraud.) It is further alleged, at paragraph 32(b), that "pursuant to defendant's ... standards, regulations, and representations ... defendant is barred from denying reimbursement to plaintiff for services which its administrators performed during said cost year."

 The allegations of paragraphs 32(a) and (b) refer to past rate years which have no impact upon the current year's rate. As such, they could only be relevant to a claim for retroactive relief. Any such retroactive relief against the state, however, is barred by the eleventh amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

 Plaintiff further alleges in Count III, at paragraph 32(c), that "any rate reductions ... [employed by the defendant as] the means of barring [by disallowing their salary costs] said administrators' participation in the program after December 10, 1982 violates the Social Security Act, 42

---

**2.** An eleventh amendment defense is in the nature of a jurisdictional bar. *Edelman v. Jordan*,

415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63 (1974).

U.S.C. Section 1396a, *et seq.*, and regulations promulgated thereafter." This is a conclusory allegation of law and plaintiff has not set forth sufficient facts to sustain it. Indeed, Title XIX of the Social Security Act requires that certain rates be reduced or that certain costs be disallowed. Specifically, 42 U.S.C. § 1396a(a)(39), 42 U.S.C. § 1320a–7(a), combined with their state law counterpart Conn.Gen.Stat. § 17–83k would bar reimbursement by the state for costs incurred by the plaintiff for the salaries of administrators convicted of Medicaid fraud as plaintiff's administrators were here. "No vendor shall be eligible for reimbursement for any goods provided or services performed by a person convicted of a crime involving fraud in such programs." § 17–83k(b).[3] Since the disallowance of those

3. 42 U.S.C. § 1396a(a)(39) provides that the State plan must,

provide that the State agency shall bar any specified person from participation in the program under the State plan for the period specified by the Secretary, when required by him to do so pursuant to section 1320a–7 of this title, *and provide that no payment may be made under the plan with respect to any item or service furnished by such person during such period.*

(Emphasis supplied).

42 U.S.C. § 1320a–7(a) provides in relevant part:

(a) Whenever the Secretary determines that a physician or other individual has been convicted (on or after October 25, 1977, or within such period prior to that date as the Secretary shall specify in regulations) of a criminal offense related to such individual's participation in the delivery of medical care or services under subchapter XVIII, XIX, or XX of this chapter, the Secretary—

(1) shall bar from participation in the program under subchapter XVIII of this chapter each such individual otherwise eligible to participate in such program;

(2)(A) shall promptly notify each appropriate State agency administering or supervising the administration of a State plan approved under subchapter XIX of this chapter of the fact and circumstances of such determination, and ... require each such agency to bar such individual from participation in such plan for such period as he shall specify, which in the case of an individual specified in paragraph (1) shall be the period established pursuant to paragraph (1); ....

Further, 42 U.S.C. § 1320a–7(e) provides:

(e) Any person or entity who is the subject of an adverse determination made by the Secretary under subsection (a), (b), or (c) of this section shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

Thus it is clear that pursuant to federal law *no payment* may be made by the state for certain costs incurred by a nursing home if those costs are for items or services furnished by an individual barred by the Secretary of Health and Human Services for conviction of a criminal offense related to the individual's participation in, *inter alia,* the Medicaid program.

Conn.Gen.Stat. § 17–83k provides as follows:

(a) No vendor of goods or services performed for or sold to any beneficiary under this chapter nor any vendor who provides services to recipients under Title XIX of the Social Security Act, as amended, shall, (1) with intent to defraud, present for payment any false claim for goods or services performed; (2) accept payment for goods or services performed, which exceeds either the amounts due for goods or services performed, or the amounts authorized by law for the cost of such goods or services; (3) solicit to perform services for or sell goods to any such beneficiary, knowing that such beneficiary is not in need of such goods or services; (4) sell goods to or perform services for any such beneficiary without prior authorization by the department of income maintenance, when prior authorization is required by said department for the buying of such goods or the performance of any service; or (5) accept from any person or source other than the state an additional compensation in excess of the amount authorized by law. For the purposes of this section "vendor" means any person acting on his own behalf or on behalf of an entity and any entity furnishing goods or services.

(b) Any vendor found in violation of subsection (a) of this section shall be subject to the penalties for larceny under sections 53a–121 to 53a–125, inclusive, which penalty shall depend upon the amount of money involved. Any such vendor shall also be subject to forfeiture or suspension of any franchise or license held by him from the state in accordance with this subsection, after hearing in the manner provided for in sections 4–177 to 4–180, inclusive. Any vendor convicted of larceny resulting from a violation of subsection (a) of this section shall have such license or franchise suspended for one month for the first such conviction, six months for the second such conviction, and one year for the third such conviction. The vendor shall have such license or franchise revoked for a fourth conviction. Any vendor who is convicted in any state or federal court of a crime involving

administrators' salaries could not be reflected as a reduction in rates until after the cost year in which the plaintiff actually paid those salaries, rate reductions employed by the defendants as a means of disallowing the salary costs of plaintiff's administrators who had been convicted of welfare fraud in late 1982 and sentenced on December 9, 1982, would be mandated by federal law as opposed to being in violation of it.

 In paragraphs 32(d) and 34 of Count III the plaintiff alleges that it has been singled out by the defendant for discriminatory treatment with respect to the defendant's alleged failure to provide the plaintiff with certain audit and exit confer-

fraud in the Medicare program or Medicaid program or aid to families with dependent children program or state supplement to the Federal Supplemental Security Income Program or any federal or state energy assistance program or general assistance program shall be terminated from such programs, effective upon conviction, except that the commissioner of income maintenance may delay termination for a period he deems sufficient to protect the health and well-being of beneficiaries receiving services from such vendor. No vendor shall be eligible for reimbursement for any goods provided or services performed by a person convicted of a crime involving fraud in such programs. The convicted person may request a hearing concerning such ineligibility for reimbursement pursuant to sections 4–177 to 4–180, inclusive, provided such request is filed in writing with the commissioner of income maintenance within ten days of the date of written notice by the commissioner to the person of such ineligibility. The commissioner shall give notice of such ineligibility to such vendors by means of publication in the Connecticut Law Journal following the expiration of said ten-day hearing request period, if no timely request has been filed, or following the decision on the hearing. The commissioner of income maintenance may take such steps as he considers necessary to inform the public of the conviction and ineligibility for reimbursement. No vendor or person so terminated or denied reimbursement shall be readmitted to or be eligible for reimbursement in such programs for at least three years from the date of termination or conviction. Any such application for readmission to the programs and eligibility for reimbursement shall be subject to the provision of sections 4–177 to 4–180, inclusive. In any such proceeding the burden of proof shall be on the vendor or person seeking such readmission. Any sums paid in violation of subsection (a) of this section may be recovered in an action brought by the state against such person.

(c) For the purpose of determining compliance with subsection (b) all vendors shall notify the commissioner within thirty days after the date of employment or conviction, whichever is later, of the identity, interest and extent of services performed by any person convicted of a crime involving fraud in the Medicare program or Medicaid program or aid to families with dependent children program or state supplement to the Federal Supplemental Security Income Program or any federal or state energy assistance program or general assistance program. Prior to the commissioner's acceptance of a provider agreement or at any time upon written request by the commissioner, the vendor shall furnish the commissioner with the identity of any person convicted of a crime involving fraud in such programs who has an ownership or control interest in the vendor or who is an agent or managing employee. The commissioner shall terminate, refuse to enter into or renew an agreement with a vendor, except a vendor providing room and board and services pursuant to section 17–314, if such convicted person has such interest or is such agent or employee. In the case of a vendor providing room and board and services pursuant to section 17–314, the commissioner may terminate, refuse to enter into or renew an agreement after consideration of any adverse impact on beneficiaries of such termination or refusal.

(d) The department of income maintenance shall distribute to all vendors who are providers in the medical assistance program a copy of the rules, regulations, standards and laws governing the program. The commissioner of income maintenance shall adopt by regulation in the manner provided for in sections 4–166 to 4–176, inclusive, administrative sanctions against providers in the Medicare program or Medicaid program or aid to families with dependent children program or state supplement to the Federal Supplemental Security Income Program including suspension from the program, for any violations of the rules, regulations, standards or law. The commissioner may adopt regulations in accordance with the provisions of chapter 54 to provide for the withholding of payments currently due in order to offset money previously obtained as the result of error or fraud. The department shall notify the proper professional society and licensing agency of any violations of this section.

(e) Notwithstanding the provisions of section 54–193, no person shall be prosecuted under the provisions of this section, except within five years next after the offense has been committed.

ences and with regard to a reduction on the plaintiff's reimbursement rates, all in violation of the due process and equal protection clauses of the fourteenth amendment. Plaintiff's due process claim was also alleged in Count I. It was rejected in the above discussion with respect to Count I and that discussion is equally applicable here. Plaintiff's allegation that it has been singled out in an arbitrary manner in violation of the equal protection clause also fails to state a claim upon which relief can be granted. First, plaintiff's allegation that it was "singled out" is a mere conclusory allegation not otherwise addressed or substantiated by the plaintiff by additional allegations of fact. Second, the equal protection clause does not reject the government's ability to classify or "draw lines" in the creation and application of laws. Rather, it guarantees that those classifications will not be based on impermissible criteria. If the government classification relates to a proper governmental purpose, then the classification will be upheld. The equal protection guarantee has nothing to do with the determination of whether a specific individual is properly placed within a classification. Rather, equal protection tests whether the classification is properly drawn. *See generally,* Nowak, Rotunda & Young, *Constitutional Law* Ch. 16, at 585 *et seq.* (2d ed. 1983). Plaintiff's bare allegation that it has been singled out for arbitrary treatment does not rise to the level of a cognizable equal protection claim. *Johnson v. Wells,* 566 F.2d 1016 (5th Cir. 1978) (dismissal upheld since mere statement that a government agency had acted arbitrarily would not be taken as true). This is especially so in light of the statutory basis for reducing plaintiff's reimbursement rates to disallow reimbursement for salaries of plaintiff's administrators who were convicted of Medicaid fraud.

 The only other allegation in Count III which must be addressed is in paragraph 33 where plaintiff alleges that "[i]n paying its administrators' salaries during said cost years, plaintiff relied on *its entitlement to reimbursement* by defendant." To the extent that the plaintiff is alleging here that the Title XIX Medicaid program creates an entitlement program for providers of medical services, as distinguished from recipients of medical services, such a claim has no merit. That same argument was addressed and rejected in Count I above. At most, the plaintiff may have a contractual right as against the state, which arises under state and not federal law, consideration of which is barred here by the Supreme Court's decision in *Pennhurst State School and Hospital v. Halderman.*

In light of the foregoing, Count III is dismissed.

### Count IV

The claim asserted in paragraphs 35 and 38 of Count IV, that the defendant's denial of certain reimbursement was in violation of the Social Security Act, is essentially the same claim that was made in paragraph 32(c), and is rejected for the reasons already given. To the extent that retroactive monetary relief is being sought in paragraphs 36 and 37, such relief is barred by the eleventh amendment. Finally, to the extent that the claim rests on the assertion that the plaintiff has some entitlement under the Medicaid program, is an intended beneficiary of the Medicaid program, or has some federally protectable property interest in reimbursement rates determined by the state under the Medicaid program, the claim is insupportable. *Arden House, Inc. v. Heintz,* 612 F.Supp. 81, (Ruling on Defendant's Motion to Dismiss, D.Conn. 1985).

### Conclusion

Having examined the factual allegations of the plaintiff's complaint, taking them as true, and having reviewed the plaintiff's allegations of violations of its rights under the Constitution and laws of the United States, it is apparent that the various counts of the plaintiff's complaint must be dismissed on several alternative grounds, including their failure to state a claim upon which relief may be granted and the lack of

subject matter jurisdiction in this court over the claims alleged or to award the type of relief sought. The defendant's motion to dismiss is granted.

SO ORDERED.