**WILMAC CORPORATION, d/b/a Heatherbank Rehabilitation and Nursing Center, Appellant**

v.

**Otis R. BOWEN, M.D., Secretary of the United States Department of Health and Human Services and Cohen, Walter W., Secretary of the Pennsylvania Department of Public Welfare.**

No. 86–1331.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1986.

Decided Feb. 19, 1987.

Steven R. Williams, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., Joel M. Hamme (argued), Pierson, Ball & Dowd, Washington, D.C., for appellant.

John O.J. Shellenberger (argued), Deputy Atty. Gen., Office of Atty. Gen., Philadelphia, Pa., for appellee, Cohen.

Diane C. Moskal (argued), Office of Chief Counsel, Charisse R. Lillie, U.S. Attorney's Office, Philadelphia, Pa., for appellee, Bowen.

Before ALDISERT, Chief Judge, and WEIS and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Wilmac Corporation is a provider of health care to Medicaid recipients and holds a certificate of need giving it permission to build an addition to its existing nursing home. Wilmac appeals from the district court's entry of summary judgment for the defendants in Wilmac's suit for a declaratory judgment to invalidate an amendment to Pennsylvania's Medicaid reimbursement policy promulgated by the Pennsylvania Department of Public Welfare with the approval of the Secretary of the Department of Health and Human Services. The amended regulations discontinue reimbursement of Medicaid providers for capital costs associated with the future construction of new long-term care facilities.

Wilmac seeks a declaration that the amended regulations violate federal stan-

dards for reimbursement of Medicaid providers under the Boren Amendment to the federal Medicaid statute, 42 U.S.C. § 1396a(a)(13)(A) (1981), and that they infringe upon the authority of the Pennsylvania Department of Health pursuant to the National Health Resources Planning and Development Act, 42 U.S.C. § 300k *et seq.*

■ We find that in light of the standards set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), this controversy is not presently ripe for judicial review. We find that further factual development would sharpen the issues and that the plaintiff has alleged no hardship to itself or to Medicaid beneficiaries which would result from withholding judicial review of the promulgation or approval of the amended regulations at this time. Accordingly we will vacate the judgment of the district court and remand for entry of an order of dismissal.

### I.

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* establishes the "Medicaid" program which provides for the federal government and participating state governments to share the cost of providing medical care to dependent children and to aged, blind or disabled individuals who are without resources sufficient to meet their medical care needs. States choosing to participate in the program must submit a plan for medical assistance for approval by the Secretary of Health and Human Services ("HHS") 42 U.S.C. § 1396. Long-term care facilities must be certified by the state agency administering the state Medicaid plan if they choose to participate in the Medicaid program, *see* 42 U.S.C. § 1396a(a)(28), and they must agree that Medicaid payments will be accepted as full compensation for services to Medicaid beneficiaries. 42 U.S.C. § 1396h(c).

Plaintiff Wilmac Corporation ("Wilmac") owns Heatherbank Rehabilitation and Nursing Center ("Heatherbank"), a Medicaid-certified skilled nursing facility. Wilmac desires to build a 90–bed addition to Heatherbank and intends to apply for Medicaid certification of the new beds. A certificate of need ("CON") authorizing construction of the addition was issued to Wilmac on August 11, 1983 by the Pennsylvania Department of Health ("DOH"), which is the agency designated to administer Pennsylvania's health planning and development program under the National Health Planning and Resources Development Act of 1974 ("NHPRDA"), 42 U.S.C. § 300k *et seq.* The NHPRDA allocates federal funds to facilitate state planning to achieve the national goals of equal access to quality health care at a reasonable cost. 42 U.S.C. § 300k(a)(1).

In September of 1982, the Pennsylvania Department of Public Welfare ("DPW"), which is the agency designated to administer Pennsylvania's Medicaid program, revised its Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities ("Manual"), 55 Pa. Code § 1181.1 *et seq.* As revised, the manual places a moratorium on Medicaid reimbursement of depreciation and interest on capital indebtedness for new long-term care construction. While facilities approved or existing at the time of the amendment are still reimbursed for these costs, capital costs are no longer a component of the *per diem* rate for reimbursement of health care facilities providing care to Medicaid patients in facilities approved for construction after August 31, 1982. HHS approved the revised regulations on July 1, 1983.[1]

Assuming that Wilmac completes the addition to Heatherbank and that the new beds are certified for Medicaid participation, if the regulations as amended are still in effect, payments to Wilmac for the care of Medicaid patients occupying new beds will not include an amount for capital reimbursement. Consequently, prior to undertaking construction, Wilmac filed this

---

1. A copy of HHS Transmittal Number 83–13 approving the amendment appears in the record at page 990 of the Appendix.

action seeking pre-enforcement review of the amended regulations.

In its complaint Wilmac alleged that the regulations should be declared invalid as contrary to federal law. The district court found that there were no issues of material fact and that the defendants were entitled to judgment as a matter of law. The plaintiff asserts the following errors on appeal.

First, Wilmac challenges the district court's finding that, on their face, the state regulations do not violate the standard for reimbursement of Medicaid providers under the Boren Amendment to the Medicaid statute. The Boren Amendment provides in pertinent part:

§ 1396a. State plans for medical assistance.

(a) Contents

A State plan for medical assistance must—

(13) provide—

(A) for payment of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards ...

42 U.S.C. § 1396a(a)(13)(A) (1981). The plaintiff argues strenuously that capital costs for anticipated construction must be reimbursable in order for a state plan to meet the statutory standard.

Both HHS and DPW respond that a reviewing court must defer to HHS's expertise in reimbursement of health care facilities. DPW argues that the regulations have a rational basis in the statutory language and purpose, and HHS argues that its approval of the regulations is consistent with the reduced federal oversight and greater state flexibility required by the Boren Amendment.

Second, Wilmac asserts that the district court misunderstood the legal basis for its claim that the moratorium should be declared invalid as violative of the NHPRDA. The district court interpreted Wilmac's argument to be that the issuance of the CON by the DOH a fortiori makes the construction expense one which "must be incurred." *See* 42 U.S.C. § 1396a(a)(13)(A). The plaintiff claims on appeal that the import of its argument was and is that DPW in amending its regulations, violated the NHRPDA by arrogating to itself functions which are properly reserved to DOH as the "sole agency" designated in accordance with the NHPRDA to determine statewide health care needs. See 42 U.S.C. § 300m-2.

Both HHS and DPW argue that Wilmac has failed to allege any violation of the NHRPDA. DPW argues that the NHRPDA does not give a Medicaid provider a right to challenge Medicaid reimbursement polices. HHS argues that the issuance of a CON does not mean that the state must fund the construction through Medicaid or otherwise.

Third, the plaintiff challenges the district court's refusal to reach the merits of Wilmac's claim of injury. The court did find that Wilmac had standing to assert claims under the Medicaid statute on behalf of itself as well as on behalf of its Medicaid patients. Nevertheless, the court found that Wilmac had alleged no *present* injury because Wilmac did not rely on the availability of Medicaid funds in obtaining financing for the addition or in obtaining its certificate of need from DOH. The court found that it was a matter of speculation as to whether Wilmac would construct the new addition, receive Medicaid certification, apply for benefits for the care of Medicaid patients in the new beds and be denied reimbursement of its capital costs.

HHS argues, and we agree, that the district court held, at least in the alternative that Wilmac's claims were premature. Because we affirm the district court's finding that Wilmac's claims of injury are prema-

ture, we need not reach the other assertions of error. We find that Wilmac's claims are not presently ripe for judicial review.

## II.

We turn to an examination of the ripeness doctrine and its application to the present controversy. As Chief Justice Rehnquist recently observed, "the basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pacific Gas & Elec. v. Energy Resources Comm'n,* 461 U.S. 190, 200, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983).

The district court found that the moratorium was designed to effectuate DPW's policy to encourage alternatives to institutional care by limiting the expansion of nursing home facilities. Wilmac disagrees with DPW's policy and asserts that its effectuation will result in violations of federal law. In determining whether this is an abstract disagreement or one which requires judicial intervention, we look to the "paramount principles" articulated by Justice Harlan in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *see A.O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 520–521 (3d Cir. 1976). One teaching of *Abbott Laboratories* is that, "where the party aggrieved seeks injunctive and declaratory relief as here, since those remedies are discretionary, the court should hesitate to apply them unless (a) the issues are fit for judicial resolution and (b) withholding judicial consideration would result in hardship to the parties." *A.O. Smith Corp.,* 530 F.2d at 521, *citing Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515.

Wilmac attempts to establish a ripe controversy by comparing its situation to that of the petitioners in *Pacific Gas & Electric v. Energy Resources Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). In *Pacific Gas,* a California statute imposing a moratorium on certification of new nuclear facilities for an indefinite period was challenged by utilities who alleged that the moratorium made further investment in nuclear plants an unreasonable economic risk. The Supreme Court did not require the petitioners to risk their capital and build the plants in order to obtain a ruling on the validity of the moratorium. Wilmac asserts that similarly, it should not be required to build its addition in order to obtain review of the Medicaid moratorium. We find that this argument fails.

In *Pacific Gas* the issue of federal law was whether the state statute was invalid under the Supremacy Clause because it was preempted by the Atomic Energy Act. 461 U.S. at 194, 103 S.Ct. at 1717. The question of preemption was a predominantly legal issue such that its resolution would not necessarily be facilitated by further factual development. *Id.* at 201, 103 S.Ct. at 1720. Here, however, the controversy between Wilmac and the defendants is whether future capital costs "must be incurred by efficiently and economically operated facilities," *see* 42 U.S.C. § 1396a(a)(13)(A), or whether "care and services in conformity with applicable state and federal laws, regulations, and quality and safety standards," *id.,* can be provided by alternatives to long term institutional care for Medicaid patients. Resolution of this issue requires a period of time for further factual development to assist in a determination of whether in fact the requisite care can be provided through the reallocation of resources encouraged by the state administrative policy as approved by HHS. Therefore, the fitness of the issues counsels against judicial review. *See Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

Furthermore, Wilmac has alleged no hardship sufficient to justify judicial interference at this stage. "In measuring ripe-

ness from the standpoint of whether withholding judicial review would result in hardship to the parties, the Supreme Court requires that the impact on the complaining party be 'sufficiently direct and immediate.'" *A.O. Smith Corp.*, 530 F.2d at 522, quoting *Abbott Laboratories*, 387 U.S. at 152, 87 S.Ct. at 1517. Cases dealing with the issue of hardship have focused on the effective limitation by agency action of a plaintiff's choices of conduct in light of the challenged regulation. In the *Abbott Laboratories* trilogy[2] the Supreme Court examined whether the choices open to the various petitioners presented them with a satisfactory alternative to a preenforcement judgment action.

In *Abbott Laboratories* petitioner drug companies were faced with the choice of complying at considerable expense with a labeling regulation they believed to be illegal or risking serious civil and criminal penalties for non-compliance. 387 U.S. at 152–153, 87 S.Ct. at 1517. The petitioners in *Gardner v. Toilet Goods Ass'n.* were faced with a similar choice to comply with regulations they believed to be illegal by significantly changing the conduct of their affairs or to continue to distribute products which would subject them to civil or criminal penalties if the challenged regulations were found valid. The Supreme Court found both controversies ripe for review.

■ Wilmac does not assert that it is faced with such a Hobson's choice. The challenged regulations require nothing of Wilmac directly. The disputed regulation does not compel or penalize any current conduct by Wilmac. The threatened injury alleged is merely the risk that if it decides to build, Wilmac will not be able to rely on Medicaid funds to recoup its investment.

Wilmac may easily and certainly avoid this. It may avail itself of other sources of funding, or it may decide not to accept Medicaid patients. No sanctions whatever attend a decision not to build if the addition appears to be an unreasonable economic risk. Mere economic uncertainty affecting the plaintiff's planning is not sufficient to support premature review. *Accord, Tennessee Gas Pipeline Co. v. F.E.R.C.*, 736 F.2d 747 (D.C.Cir.1984).

Nor is Wilmac's position sufficiently analogous to that of the petitioner in *Pacific Gas* to support a finding of hardship from withholding review. It was not merely the fact that an allegedly unlawful statute made it uneconomical for the petitioner to engage in formerly desirable conduct which caused the Supreme Court to find the issues in *Pacific Gas* ripe for review. One of the key purposes of the Atomic Energy Act was to encourage the commercial development of atomic energy. Consequently, in *Pacific Gas*, the petitioner's reasonable economic decision not to proceed with construction apparently conflicted with the federal statutory policy. No choice open to the petitioner in light of the existence of the challenged statute presented a satisfactory alternative to judicial review. Wilmac has set forth no argument that the contested regulation is preempted by any federal policy to encourage construction of new nursing care facilities through the use of Medicaid funds.[3]

An apparent attempt to establish a threatened violation of federal policy inheres in Wilmac's argument under the NHPRDA. The plaintiff correctly maintains that the Pennsylvania Department of Health ("DOH") is the only agency authorized to determine Pennsylvania's long-term health care needs and to authorize or

---

**2.** *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Ass'n. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Ass'n.*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

**3.** Nor could it sustain such an argument since express federal policy is to the contrary. The purpose of the review program established by 42 U.S.C. § 1320a–1 is to discourage the use of federal funds appropriated under the Medicaid statute to support unnecessary capital expenditures by or on behalf of health care facilities. This program is also administered by HHS.

disapprove construction of long-term care facilities through the CON program. The district court characterized Wilmac's argument as being that the issuance of the CON made the future capital expense a cost which "must be incurred", *see* 42 U.S.C. § 1396a(a)(13)(A), and must therefore be reimbursed in accordance with the statutory standard. Wilmac asserts that its argument is that in encouraging alternatives to new construction DPW has usurped the planning function conferred by statute solely upon DOH. Neither characterization of the argument suffices to establish that Wilmac's potential decision not to build the addition because of the probable unavailability of Medicaid funds will result in a current hardship.[4] Wilmac hypothesizes that Medicaid patients may suffer from a lack of necessary facilities. If such a result appears imminent, however, the agency may decide to alter its course of encouraging alternative care.

In accordance with the foregoing we find that future developments may precipitate a conflict immediate and focused between the parties but that is not the situation at this time. No hardship has been alleged which would justify court intervention before it can be determined whether the DPW policy will prove future Medicaid support of long term health care construction to be necessary or unnecessary. Therefore we find that the controversy is not yet ripe and we will vacate the judgment and remand these proceedings to the district court with a direction that it enter an order dismissing the complaint.

---

**4.** In response to the court's inquiry at oral argument, the attorney for Wilmac acknowledged that Wilmac would probably be able to build the addition without the assurance of Medicaid funds. Documents of record reveal that in considering Wilmac's application for a certificate of need, DOH specifically requested that Wilmac address the financial viability of the project in light of DPW's proposal to discontinue reimbursement of depreciation and interest for new nursing care beds. *See* Reviewers Report to the DOH Proposal Review Committee, *reprinted in* Appendix at A475–480. The appendix contains the affidavit of a senior financial analyst with DOH describing a meeting with Wilmac's representatives who assured him that Heatherbank's estimated net income for the first full year of operation with the 90 additional beds would be sufficient to make the project financially and economically feasible despite the DPW regulations. *See* Affidavit of Henry Litner, *reprinted in* Appendix at A344–47. Finally DOH's approval of the CON was based on the finding that "the project is considered financially feasible." *See* letter from DOH to Webster McCormack, President, Wilmac Corporation (August 11, 1983), *reprinted in* Appendix at A482.