**VANTAGE HEALTHCARE CORPORATION, Plaintiff,**

**v.**

**The VIRGINIA BOARD OF MEDICAL ASSISTANCE SERVICES, et al., Defendants.**

**Civ. A. No. 87–0781–R.**

United States District Court, E.D. Virginia, Richmond Division.

May 11, 1988.

10. 18 U.S.C. § 924(a)(1) reads:
   Except as otherwise provided ... whoever (B) knowingly violates ... [subsection] (g) ... of section 922 ... shall be fined not more than $5,000, imprisoned not more than five years or both, and shall become eligible for parole as the Parole Commission shall determine.

Mark S. Tenenbaum, Ralph J. Ehlinger, Casson, Harkins, & LaPallo, Washington, D.C., Robert Nash, Janice Hoffman, for plaintiff.

Roger L. Chaffe, Pamela M. Reed, Virginia R. Manhard, Office of the Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

SPENCER, District Judge.

This matter comes before the Court on defendants' motion to dismiss or for summary judgment. The parties have fully briefed the motion, and oral argument was had on March 28, 1988. For reasons stated below, the motion to dismiss will be granted.

Plaintiff, Vantage Healthcare Corporation ("Vantage"), is a Delaware corporation, with its principal place of business in Indiana. Vantage operates nursing homes throughout the United States, including one in Newport News, Virginia. That home, the Huntington Convalescent Center, is a Medicaid services provider.

There are four defendants: The Virginia Board of Medical Assistance Services, the Virginia Department of Medical Assistance Services ("DMAS"), Eva S. Tieg (Virginia Secretary of Human Resources), and Ray T. Sorrell (Director of the Virginia Department of Medical Assistance Services). The Virginia Board of Medical Assistance Services is responsible for preparing and amending a State plan for medical assistance services pursuant to the federal Medicaid Act. DMAS is the state agency which administers the Virginia Medicaid program. Tieg and Sorrell are officials who are involved in administration of the program.

Vantage presents a two-count complaint. Count One is an action to declare unlawful and to enjoin an amendment to the Virginia Medicaid plan which eliminates payment of a return on equity capital ("ROE") to proprietary providers of health care services (like nursing homes). Count Two is an action to enjoin the defendants from refusing to recognize a lease of a nursing home facility operated by Vantage for purposes of computing the Medicaid reimbursement to which Vantage is entitled.

## COUNT ONE

### Background

The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, establishes a cooperative federal-state medical assistance program. States may receive federal funding if the state's Medicaid plan is submitted to and approved by the Secretary of the United States Department of Health and Human Services. Virginia's plan has been submitted and approved. The Virginia program is known as the Virginia Medical Assistance Program, and is administered by DMAS. Funding is provided by the United States Department of Health and Human Services, Health Care Financing Administration ("HCFA"), and the Commonwealth of Virginia. Payments are made to health care providers, such as Vantage, which render covered medical services to eligible recipients. Although states may set up their own payment methods, the federal act and regulations set some minimum requirements which plans must meet in order to receive federal funding.

Prior to 1986, nursing homes in Virginia received ROE as a part of their Medicaid reimbursements. ROE represents a percentage bonus on stockholder's equity in privately owned or proprietary nursing homes, and was purportedly adopted to encourage the investment of private capital in nursing homes.

In early 1987, the Virginia General Assembly adopted Item 398D of its 1987 Appropriations Act, which mandated that the Board of Medical Assistance Services amend its Medicaid plan to eliminate ROE payments, effective July 1, 1986. Regulations were published by the Commonwealth

in early June 1987, and, after a public comment period, were submitted to HCFA on September 28, 1987. Subsequent to the filing of this action and defendants' motion, HCFA, on February 5, 1988, informed the Commonwealth that it would not approve the amendment with an effective date of July 1, 1986. DMAS has now resubmitted the amendment to HCFA, and approval has been received for an effective date of July 1, 1987. DMAS is currently implementing the elimination of ROE for nursing home providers as of that date.

Vantage is unhappy with the elimination of ROE. It complains about, *inter alia,* rates, findings, incompatibility with the currently approved state plan, and the adequacy of notice.

### Discussion

Although the parties present a number of issues in reference to this count, only one requires the Court's attention. That issue is whether Vantage is prohibited from advancing this claim pursuant to 42 U.S.C. § 1983[1] due to an absence of statutorily created enforceable rights.

■ It is clear that § 1983 is available to redress violations of federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). However, the United States Supreme Court has carved out two exceptions to the availability of § 1983: (1) where Congress has foreclosed enforcement of a statute by a § 1983 action by indicating an intent to foreclose in the statute itself, and (2) where the statute does not create enforceable rights, privileges or immunities within the meaning of § 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

■ In determining whether enforceable rights exist, legislative intent is paramount. *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 774, 93 L.Ed.2d 781 (1987). Moreover, the party seeking to bring the action must point to "substantive provisions" of the statute(s) in question which give it "a tangible right, privilege, or immunity." *Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210, 1217 (4th Cir.1981).

In focusing on the enforceable rights inquiry, at least two circuit courts have indicated that an "implied right of action" analysis is useful. *Edwards v. District of Columbia,* 821 F.2d 651, 654 n. 4 (D.C.Cir. 1987); *Coos Bay Care Center v. State of Oregon, Department of Human Resources,* 803 F.2d 1060, 1062 (9th Cir.1986), *vacated and remanded to consider mootness,* —— U.S. ——, 108 S.Ct. 52, 98 L.Ed. 2d 17 (1987). Specifically, the first element in the *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), four-part test is considered to determine "whether a statute was enacted for the special benefit of a plaintiff or a plaintiff class." *Coos Bay Care Center,* 803 F.2d at 1063.

To say the least, the courts have differed on the issue of the health care providers' role in the Medicaid scheme. A number of courts, drawing on the statutory language,[2] have stated that the Medicaid Act

---

**1.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** 42 U.S.C. § 1396 reads as follows:

For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section

was enacted for the express and special benefit of the individual recipients. Such courts have held that health care providers are not intended beneficiaries of the Medicaid Act. *Silver v. Baggiano,* 804 F.2d 1211, 1216 (11th Cir.1986); *Geriatrics, Inc. v. Harris,* 640 F.2d 262, 265 (10th Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981); *Green v. Cashman,* 605 F.2d 945, 946 (6th Cir.1979); *Arden House, Inc. v. Heintz,* 612 F.Supp. 81, 84 (D.Conn.1985); *St. Joseph Hospital v. Electronic Data Systems Corp.,* 573 F.Supp. 443, 447 (S.D.Tex.1983); *Pennsylvania Pharmaceutical Ass'n v. Department of Public Welfare of Commonwealth of Pennsylvania,* 542 F.Supp. 1349, 1356 (W.D.Pa.1982); *State v. Bair,* 463 N.E.2d 1388, 1391 (Ind.Ct.App.1984). *See also Cervoni v. Secretary of Health, Education and Welfare,* 581 F.2d 1010, 1018 (1st Cir.1978) (physicians are not intended beneficiaries under *Medicare* ).

Furthermore, courts have found that health care providers have no property rights or interests in (1) retaining overpayments, *St. Joseph Hospital,* 573 F.Supp. at 447; (2) a particular rate of reimbursement, *Al–Charles, Inc. v. Heintz,* 620 F.Supp. 327, 331 (D.Conn.1985); or (3) prospective reimbursement, *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.1984); *Grossman v. Axelrod,* 646 F.2d 768, 771 (2d Cir.1981); *Al–Charles, Inc.,* 620 F.Supp. at 331; *Arden House, Inc.,* 612 F.Supp. at 84.

On the other hand, however, the Second Circuit has held that providers do have protectible property interests in continued participation in the Medicaid program. *Patchogue Nursing Center v. Bowen,* 797 F.2d 1137, 1144–45 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 873, 93 L.Ed. 2d 828 (1987); *Case v. Weinberger,* 523 F.2d 602, 606 (2d Cir.1975).

Finally, at the extreme end of the spectrum stand recent decisions by the Ninth and Tenth Circuits. In *Colorado Health Care Ass'n v. Colorado Department of Social Services,* 842 F.2d 1158, 1164 n. 5 (10th Cir.1988), and *Coos Bay Care Center,* 803 F.2d at 1063 (9th Cir.1986), the courts held that Medicaid patients and providers have "parallel interests."

In attempting to reconcile these conflicting viewpoints, it is useful to focus on the statutory language concerning reimbursement plans. 42 U.S.C. § 1396a(a)(13)(A) provides in pertinent part as follows:

A State plan for medical assistance must—provide—

for payment ... of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, are *reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities....*

(Emphasis added.) *See also* 42 C.F.R. § 447.250(a).

Vantage points to this language to support its position that it has statutorily-created enforceable rights. This argument is unpersuasive. The thrust of 42 U.S.C. § 1396a(a) is to apprise the states of the requirements for approval of state Medicaid plans. Indeed, 42 U.S.C. § 1396a(b) states: "the Secretary shall approve any plan which fulfills the conditions specified in subsection (a) of this section...." While the implementing regulations, 42 C.F.R. § 447.253(c), require states to establish an administrative review scheme concerning provider appeals of payment rates,[3] nothing in the statute, taken in its proper context, nor the regulations, indicates that Vantage has a tangible right, privilege, or immunity concerning ROE or its elimination.

In addition, Vantage can point to nothing in the legislative history of the Medicaid Act which would indicate that it possesses § 1983 enforceable rights in the context of

shall be used for making payments to States which have submitted, and had approved by the Secretary of Health and Human Services, State plans for medical assistance.

**3.** Virginia has implemented such a scheme through the use of the Virginia Administrative Process Act, Va.Code §§ 9–6.14:1 *et seq.*

this case. The legislative history concerned with the original enactment of Medicaid in 1965 indicates that administrative and judicial review is required in cases where providers are found not to qualify for participation in the program, or where provider agreements are terminated. S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin. News 1943, 1991–92. However, even a broad reading of this history fails to invest health care providers with § 1983 enforceable rights in all situations, or in the instant one. To be sure, the investiture of rights for one purpose, e.g., status as a Medicaid provider, does not likewise invest a plaintiff with rights for other purposes, e.g., a specific provider reimbursement rate.[4]

On another score, Vantage asserts that it is invested with § 1983 enforceable rights pursuant to the Preamble to 46 Fed.Reg. 47,964 (1981). While this Court recognizes that the Supreme Court, in a five-four decision, seemingly established that administrative regulations can be the source of enforceable rights, *Wright v. City of Roanoke Redevelopment and Housing Authority*, 107 S.Ct. at 774, there is nothing in this Preamble to confer onto Vantage the right to pursue this claim.

4. This point is underscored by the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). Although it preceded *Pennhurst* and *Sea Clammers*, *O'Bannon* is useful in this discussion because the Court found that Medicaid recipients have "the right to choose among a range of *qualified* providers," but do not have the right "to enter an unqualified home and demand a hearing to certify it" or "to continue to receive benefits for care in a home that has been decertified." *O'Bannon*, 447 U.S. at 785, 100 S.Ct. at 2475 (emphasis in original).

5. This Court also rejects the holding of the district court in *Yapalater v. Bates*, 494 F.Supp. 1349 (S.D.N.Y.1980), *aff'd*, 644 F.2d 131 (2d Cir. 1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982), wherein a psychiatrist complained of New York's refusal to approve Medicaid reimbursement for services of ancillary personnel. The court considered whether the psychiatrist could bring the cause of action. In its analysis, the court referred to Justice Powell's dissent in *Maine v. Thiboutot*, 448 U.S.

■ Having found nothing in the statutory language, implementing regulations, legislative history, or controlling precedent to support Vantage's position, this Court holds that Vantage, in the context of this action, has no enforceable rights under § 1983. In so holding, this Court specifically rejects the notion advanced by the Ninth and Tenth Circuits that Medicaid recipients and providers have "parallel interests." There is *no* legislatively-grounded support for this broad-based categorical statement. Rather, it would seem that recipients and providers are each invested with certain specific enforceable rights, which do not allow for the assertion of rights by that group for any and all purposes, nor for the transmission of those rights to the other group.[5]

Count One of Vantage's complaint will be dismissed.

## COUNT TWO

### *Background*

Vantage occupies the Huntington Convalescent Center pursuant to a sublease dated April 1, 1972, and took possession of the facility pursuant to an assigned sublease and commenced operations on December 31, 1983. Since that time, Vantage's reimbursement has been based upon the rentals

1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). There, Justice Powell wrote: "The only exception [to allowing a plaintiff to bring a § 1983 claim] will be in cases where the governing statute provides an exclusive remedy for violations of its terms." *Id.* at 22 n. 11, 100 S.Ct. at 2507 n. 11. The *Yapalater* court, relying on this language, wrote: "That [Justice Powell's] summary of *Thiboutot's* effect appears entirely accurate. On what basis, then, is plaintiff to be denied a § 1983 remedy?" *Yapalater*, 494 F.Supp. at 1358.

We now know that Justice Powell's summary is not entirely accurate. In *Pennhurst* and *Sea Clammers*, the Court carved out another exception to the valid prosecution of a § 1983 claim. That exception, of course, is where Congress has not created enforceable rights for this plaintiff in the relevant statutory provision. Thus, in light of *Pennhurst* and *Sea Clammers*, the reasoning of the *Yapalater* court is faulty, and the reasoning of subsequent cases which rely on *Yapalater, e.g., Nebraska Health Care Ass'n v. Dunning*, 778 F.2d 1291, 1295 (8th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 947, 93 L.Ed.2d 996 (1987), must also be questioned.

provided in the sublease. The sublease terminates on March 31, 1992, with an option to extend until December 1997. However, the original lease (from a company named Fulton–Newport to a company named Ganot) terminates on December 29, 1989. Vantage has negotiated a proposed lease directly with Fulton–Newport to allow Vantage to continue to operate the Huntington facility until December 29, 2004. The lease is subject to approval by the defendants, and provides for rentals lower than those provided for in the present sublease.

Vantage has requested that DMAS confirm that the newly negotiated lease will be considered a renewal and extension of a lease approved prior to August 8, 1975. This is important to Vantage because the Virginia Medicaid Plan, Nursing Home Payment System § 2.1, states: "Renewals and extensions to these leases [leases approved prior to August 18, 1975] will be honored for reimbursement purposes only when the dollar amount negotiated at the time of renewal does not exceed the amount in effect at the termination date of the existing lease."

Vantage has assured DMAS that it will seek reimbursement for no more than the amount of rentals provided in the sublease. By letters dated June 25, 1987 and September 2, 1987, the Audit Manager of DMAS's Division of Provider Reimbursement indicated that the newly negotiated lease would not be considered a "renewal or extension."

Vantage contends that the result of the DMAS's position is that as of December 30, 1989, it will either have to abandon the facility or lease the facility under the proposed renewal lease, but with reimbursement based upon the "historical costs" of the facility to the owner, Fulton–Newport. Fulton–Newport purchased the property prior to 1968 and for a price far less than the prevailing cost of comparable facilities today. The result, according to Vantage, is that it will be reimbursed at a rate far lower than other lessee-providers and even lower than owner-providers. Vantage asks this Court to find that defendants are incorrect in their determination that the newly negotiated lease is not a renewal or extension. It argues that the rates are not reasonable and adequate, that due process and equal protection have been violated, and that the federally mandated efficiency, economy and quality of care will not be assured.

### Discussion

Although DMAS has, by way of two letters, indicated that the newly negotiated lease will not be considered a "renewal or extension," DMAS cannot take any formal action to disallow rentals paid prior to settlement of Vantage's 1989 cost report. No official reimbursement decision will be made by DMAS until application is made for reimbursement of costs incurred under the new lease. As such, although DMAS is unlikely to reverse its position, the two letters in question constitute nothing more than advisory opinions. If and when DMAS officially denies the applied-for reimbursement, an administrative appeal under the Virginia Administrative Process Act is available to Vantage.

██ Simply put, this matter is not ripe. Indeed, this situation is seemingly identical to that faced by the Third Circuit in *Wilmac Corp. v. Bowen*, 811 F.2d 809 (3d Cir.1987). There, a health care provider sought a declaratory judgment to invalidate a state amendment to Medicaid reimbursement provisions which would discontinue reimbursement of Medicaid providers for costs associated with future construction of new long-term care facilities. Wilmac Corporation, which wanted to build a new facility, sought a declaration through the courts that it would be reimbursed before it started construction. The Third Circuit held that the matter was not ripe. There was no bar to Wilmac Corporation building the facility, and the issue of reimbursement would be addressed after completion of the building. The risk that Wilmac Corporation would not be reimbursed was not sufficient to support review. "Mere economic uncertainty affecting the plaintiff's planning is not sufficient to support premature review." *Id.* at 813.

Hence, Count Two of Vantage's complaint will be dismissed for lack of ripeness.

An appropriate Order shall issue.