CEC ENERGY CO., INC.

v.

PUBLIC SERVICE COMMISSION OF
the VIRGIN ISLANDS.

Appeal of PUBLIC SERVICE
COMMISSION OF the
VIRGIN ISLANDS.

No. 89–3390.

United States Court of Appeals,
Third Circuit.

Submitted Sept. 27, 1989.

Decided Dec. 20, 1989.

Maria Tankenson Hodge, St. Thomas, U.S. Virgin Islands, for appellant.

R. Sarah Compton, McDermott, Will & Emery, Washington, D.C., Frederick G. Watts, Watts and Streibich, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee.

Before HIGGINBOTHAM, STAPLETON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is an appeal from a grant of summary judgment in favor of CEC Energy Co., Inc. ("CEC"). CEC had petitioned the district court to review an order of the Public Services Commission of the Virgin Islands ("PSC"), in which PSC claimed jurisdiction to investigate a contract between CEC and the Virgin Islands Water & Power Authority ("WAPA"). The district court held that PSC lacked authority to review the contract. *CEC Energy Co. v. Public Services Commission,* Civil No. 88–322 (D.V.I. May 2, 1989). We decline to decide whether the district court correctly construed the power of PSC because we find that the PSC order is not ripe for judicial review.

## I.

WAPA is a public corporation and autonomous government instrumentality, created in 1964 to develop systems that would alleviate the acute and chronic water and electric supply problems affecting the Virgin Islands. V.I.Code Ann. tit. 30, §§ 101, 103, 105 (1975 & Supp.1989). By the mid–1980's, the energy problems of the islands remained unresolved, however, as WAPA faced mounting financial and technical impediments to its operation. On May 23, 1985, WAPA and CEC entered into a twenty-year contract under which CEC agreed to construct and maintain a cogeneration facility and to sell electricity and steam to WAPA.[1] In exchange, WAPA agreed to purchase 140,000,000 kilowatt hours of electricity and 630,000,000 pounds of steam per year, which represented sixty percent of the energy needs of St. Croix and twenty-five per cent of the energy needs of the entire territory. WAPA agreed to pay 4.5 cents per kilowatt hour of electricity and two dollars per thousand pounds of steam, the price to be adjusted each year in accordance with a designated index.

PSC is the agency charged with ensuring that public utilities operating in the Virgin Islands provide safe and adequate services at rates that are just and reasonable. V.I. Code Ann. tit. 30, §§ 2, 20 (1975).[2] According to PSC, it had reason to believe that implementation of the WAPA/CEC contract would result in higher costs for WAPA, which could threaten WAPA's financial viability and result in rate increases for consumers. Therefore, in July 1985, PSC established Docket No. 288 to determine its authority to investigate the terms of the contract, and ordered WAPA to submit a brief on the issue.[3] WAPA requested and received several extensions of time in which to respond to PSC's request. CEC

---

**1.** CEC is a wholly owned subsidiary of Donaldson, Lufkin & Jenrette, an international investment banking firm specializing in third party cogeneration project financing. *General Eng'g Corp. v. Virgin Islands Water and Power Auth.,* 636 F.Supp. 22, 26 (D.V.I.1985), *aff'd,* 805 F.2d 88 (3d Cir.1986). A cogenerator is a facility that produces electric energy, along with steam or some other form of energy used for industrial, commercial, heating, or cooling purposes. V.I. Code Ann. tit. 30, § 46(a) (Supp.1989).

**2.** Under Virgin Islands law, the term "public utility" includes any corporation that provides water or electric power services for compensation. V.I.Code Ann. tit. 30, § 1 (1975 & Supp. 1989).

**3.** In Docket No. 288, PSC ordered WAPA to submit its position regarding the applicability of Act 5006 to the 1985 contract. Act 5006, enacted by the Virgin Islands legislature in 1984 under the title "Cogeneration and Small Power Production," authorizes PSC to order the interconnection of cogeneration and electric utility facilities. V.I.Code Ann. tit. 30, § 47(a) (Supp. 1989).

was informed of, but did not object to, the extensions. Finally, on October 1, 1987, WAPA submitted its brief.[4] Counsel for PSC and CEC responded in writing to the issues raised by WAPA.

On June 3, 1988, PSC issued Order No. 14/1988, which stated its finding that PSC "has jurisdiction to investigate the contract ..." between CEC and WAPA. CEC filed a petition requesting reconsideration of the order. Because PSC did not respond within the thirty-day period provided by statute, the petition was deemed denied. *See* V.I. Code Ann. tit. 30, § 33 (1975).

CEC appealed the PSC order to the United States District Court for the Virgin Islands before PSC began its investigation. In granting CEC's motion for summary judgment, the district court held that at the time the parties entered the contract, PSC's authority over WAPA was limited to the power to fix rates. The district court did not address the question whether the PSC order was ripe for judicial review.

## II.

■ Under Title 30 of the Virgin Islands Code, the district court has jurisdiction to hear appeals filed by any public utility, person, or corporation affected by a final order of PSC. V.I.Code tit. 30, § 34 (1975). The term "final order" is not defined in Title 30. However, the Supreme Court has considered the meaning of the term on a number of occasions involving various statutes that provide for judicial review of "final" agency actions. *See, e.g., Bell v. New Jersey*, 461 U.S. 773, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) ("final action" under § 195 of Elementary and Secondary Education Act); *FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) ("final action" under § 10(c) of Ad-

ministrative Procedure Act). Moreover, the Court's treatment of the finality issue has involved an inquiry into the broader question of whether a given action is ripe for judicial review. *See Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1080 (3d Cir. 1989) (Supreme Court's finality standard incorporates ripeness standard) (citing *FTC v. Standard Oil*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)); C. Wright, A. Miller, E. Cooper, E. Gressman, 16 *Federal Practice and Procedure* § 3942 at 314–15. (1977 & Supp.1989) (finality requirement rests on same foundation as ripeness doctrine). Although the Supreme Court's decisions interpreting federal statutes do not bind us when we are called upon to construe Virgin Islands law, we find their reasoning convincing and, in the absence of evidence that a contrary legislative intent underlies Title 30, we adopt that reasoning. *Virgin Islands Conservation Society, Inc. v. Virgin Islands Board of Land Use Appeals*, 881 F.2d 28, 35 (3d Cir.1989); *cf. West Penn Power Co. v. United States Environmental Protection Agency*, 860 F.2d 581, 584 (3d Cir.1988) (it makes sense to define finality under Clean Air Act as it is defined in administrative law generally).

■ Application of the ripeness doctrine prevents the entanglement of the courts in administrative policy disagreements and protects the agencies from judicial interference until decisions are formalized and their effects felt in a concrete way. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Awaiting the termination of agency proceedings may obviate all need for judicial review. *Standard Oil*, 449 U.S. at 244 n. 11, 101 S.Ct. at 495 n. 11. The doctrine of ripeness requires an evaluation of the fitness of the challenged issue for review and the hardship to the parties of

---

**4.** Shortly after PSC opened Docket No. 288, Governor Juan Luis of the Virgin Islands removed four members of the WAPA Board, replacing them with three of his own nominees. The governor then signed a power sale agreement with South Shore Alumina, Inc. and submitted it to the reconstituted WAPA Board for ratification, claiming that the WAPA/CEC contract was void. CEC brought suit against WAPA, seeking a determination that the WAPA/CEC

contract was valid, as well as an injunction preventing further interference with performance of the contract. The district court granted the relief in October 1985 and we affirmed in October 1986, holding that the contract did not violate the Virgin Islands' conflict of interest and competitive bidding statutes. *General Eng'g Corp. v. Virgin Islands Water and Power Auth.*, 805 F.2d 88, 92, 95–96 (3d Cir.1986).

withholding judicial consideration. *Abbott Laboratories*, 387 U.S. at 148, 87 S.Ct. at 1515.

■ Final agency actions involving purely legal questions satisfy the fitness requirement. *Id.* at 149, 87 S.Ct. at 1515. However, not all decisions that represent an agency's last word on an issue are final for purposes of review. *Texas v. United States Department of Energy*, 764 F.2d 278, 282 (5th Cir.), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 531, 88 L.Ed.2d 463 (1985). Rather, finality is to be interpreted in a pragmatic way. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515. A number of factors must be considered in assessing finality: 1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act. *Solar Turbines Inc.*, 879 F.2d at 1080 (citing *Standard Oil*, 449 U.S. at 239–40, 101 S.Ct. at 493).

PSC Order No. 14/1988 states that "the Commission finds and determines that it has jurisdiction to investigate the contract ..." between WAPA and CEC. PSC declined to act on CEC's petition for reconsideration. Clearly, the Commission has taken a position, but only on the legal question of its own jurisdiction. As yet, PSC has not had the opportunity to definitively decide the impact of the contract on consumers, nor has it concluded that modification of the negotiated contract terms is appropriate. Its decision constitutes no more than a determination that an investigation will commence, a prerequisite to definitive agency action. *See Standard Oil*, 449 U.S. at 241, 101 S.Ct. at 493 (issuance of FTC complaint averring reason to believe defendant violated Act is not a definitive position but a threshold determination that further inquiry is warranted, a prerequisite to a definitive position that defendant violated Act).

CEC claims that withholding immediate judicial review of the PSC order will further delay and possibly terminate the cogeneration project, resulting in severe hardship for the company and for the people of the Virgin Islands. According to CEC, the financing and construction of the cogeneration facility cannot begin until this appeal is resolved. Moreover, CEC alleges that construction will take eighteen months to complete and CEC's eligibility for federal tax credits will be lost unless the facility is in operation before the end of 1990.

■ The immediate impact of an agency decision and the hardship resulting from withholding review are factors to be considered in determining finality and ripeness. *Standard Oil*, 449 U.S. at 239, 101 S.Ct. at 493; *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515. The circumstances giving rise to the alleged impact and hardship to CEC, however, are different in kind from the circumstances under which courts in the past have held that agency actions are final and ripe for review. In *Abbott Laboratories*, for example, the Supreme Court found that pre-enforcement review of regulations promulgated by the Commissioner of Food and Drugs was necessary to avoid hardship to the parties. 387 U.S. at 152–53, 87 S.Ct. at 1517. In that case, the regulations at issue were immediately effective, forcing the petitioner to choose between costly compliance and the risk of severe criminal and civil penalties for failure to comply. *Id.* at 153, 87 S.Ct. at 1517. The Court held that judicial review was appropriate because the impact of the agency action was "direct and immediate," requiring "an immediate and substantial change in the plaintiffs' conduct of their affairs . . . ." *Id.*

■ In this case, the only affirmative obligation imposed on CEC by PSC's jurisdictional determination is the obligation to respond to the Commission's further inquiries. Although arguably substantial, "it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action."

*Standard Oil,* 449 U.S. at 242, 101 S.Ct. at 494 (issuance of FTC complaint lacks legal force and effect upon daily business comparable to that of *Abbott Laboratories* regulation).

Moreover, we have no way of knowing whether further investigation by PSC will result in findings that the WAPA/CEC contract causes unreasonable rates for consumers or that an adjustment in consumer rates, which could affect WAPA's ability to perform under the contract, will be necessary. Although a party need not wait until a threatened hardship becomes a reality, the hardship must be certain and impending to obtain preventive relief. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)).

In *Wilmac Corp. v. Bowen,* 811 F.2d 809 (3d Cir.1987), we held that the plaintiff corporation failed to allege sufficient hardship when, prior to construction, it challenged regulations that would discontinue reimbursements to Medicaid providers for capital costs associated with future construction of long term care facilities. *Id.* at 809–10. We noted that cases dealing with the issue of hardship have focused on the extent to which agency action limits the choices available to the parties. *Id.* at 813. We found that the regulation at issue in *Wilmac* neither compelled nor penalized the plaintiff's conduct. The threatened injury was merely the risk that if it proceeded ahead with construction, the plaintiff could not rely on Medicaid funds to recoup its investment. We held that "[m]ere economic uncertainty affecting the plaintiff's

planning is not sufficient to support premature review." *Id.; see Suburban Trails, Inc. v. New Jersey Transit Corp.,* 800 F.2d 361, 366 (3d Cir.1986) (no evidence that postponement of challenge to New Jersey Transit's denial of subsidies imposes hardship on privately owned bus companies; at most they face uncertainty over their eventual inclusion in federal grant program).

■ CEC's principal allegation of harm is that reasonable investors and lenders will not finance the project while the contract is under the cloud of official investigation, thus causing delays in the completion of the project.[5] Unfortunately, this type of harm accompanies almost every investigation into a business arrangement or the activities of a particular business entity. If such an allegation is sufficient to justify review of an agency's decision to undertake an investigation or to proceed with enforcement proceedings, courts would constantly be reviewing such decisions, disrupting the administrative process and adding to already overcrowded court dockets.

In this case, the cogeneration project is still in the pre-construction phase and the results of the PSC investigation can not be predicted. Moreover, under the WAPA/CEC contract, CEC has the option of terminating the agreement because it was unable to secure financing within one year after the agreement date.[6] Therefore, we cannot say that injury to CEC is certain and impending merely because it prefers to move ahead with the project and the pending investigation makes it more difficult to obtain the needed financing. *See Pacific Gas & Electric Co.,* 461 U.S. at 203, 103 S.Ct. at 1721 (constitutionality of state provision permitting Commission to determine adequacy of interim storage for

---

5. We note that CEC apparently did not object when WAPA took two years to respond to PSC's inquiry regarding jurisdiction. Moreover, PSC contends that the delay in construction is due in part to CEC's inability to obtain a Coastal Management Permit. Thus, according to PSC, construction could not begin even if PSC had not asserted jurisdiction to investigate the contract.

6. CEC's position differs from that of the plaintiff corporation in *Wilmac,* which had the unfettered option not to build if the project presented an unreasonable economic risk. 811 F.2d at 813. CEC is a party to a binding contract with WAPA. If CEC chooses to walk away from the project for reasons other than financing difficulties, it risks liability for breach of contract. In this regard, however, we note WAPA's hard-fought efforts in the past to extricate itself from this contract. *See* note 4, *supra.*

nuclear waste on case-by-case basis is not ripe for review; impossible to know whether Commission will ever find storage capacity inadequate).

CEC also alleges that failure to review the PSC decision now could result in hardship for the people of the Virgin Islands, who are currently enduring a serious energy crisis. However, the interests of the public are served and hardship avoided not only by the speedy enhancement of energy resources but also by ensuring that the rate charged to consumers for that energy is just and reasonable and that WAPA remains a viable entity in the territory. Therefore, we cannot say that withholding judicial review of PSC's jurisdictional decision imposes certain, impending hardship on the people of the Virgin Islands.

A final consideration is whether immediate review would speed enforcement of the relevant act. CEC claims that PSC's assertion of jurisdiction is contrary to the fundamental purpose of Act 5006, V.I.Code Ann. tit. 30, §§ 46–50 (Supp.1989), one goal of which is to encourage cogeneration and small power production. *Id.* § 49(a). A PSC determination that WAPA may not charge the rates it deems necessary to satisfy its contract obligations arguably could merit immediate review to ensure that the purpose of Act 5006 is not frustrated. *See Pacific Gas & Electric Co.,* 461 U.S. at 201–02, 103 S.Ct. at 1720–21 (state regulation imposing a moratorium on certification of new nuclear power plants is ripe for review; delayed resolution could frustrate key purpose of Atomic Energy Act). However, PSC's decision to assert jurisdiction for investigatory purposes does not on its own frustrate the purpose of Act 5006. Moreover, judicial interference in the investigatory process at this time serves to disrupt and postpone a final agency determination that in the end could obviate the need for judicial review. *See Standard Oil,* 449 U.S. at 244 n. 11, 101 S.Ct. at 495 n. 11 (possibility that challenge to agency action may be mooted if complaining party prevails in agency proceedings warrants the requirement that party pursue agency action, not shortcut it); *Bethlehem Steel Corp. v. E.P.A.,* 669 F.2d 903,

908 (3d Cir.1982) (same). Therefore, we cannot say that immediate review would speed enforcement of the Act.

### III.

In sum, the PSC order asserting jurisdiction to investigate the WAPA/CEC contract does not constitute a definitive ruling, nor does it frustrate the purposes of Act 5006. The order imposes no affirmative obligation on CEC other than the burden of responding to a Commission inquiry. Future decisions of PSC may impose additional obligations on CEC or WAPA that in turn may affect the people of the Virgin Islands. At this time, however, that outcome is neither certain nor impending. The record reflects no reason to believe that PSC will not bring its investigation to a speedy conclusion in light of the importance of this project to the people of the Virgin Islands and the extensive litigation already generated by these parties.

We find that the PSC order is not a final agency action that is ripe for review. Therefore, we will vacate the district court judgment and remand with the direction that the district court enter an order dismissing this action.

Each side to bear its own costs.