**NEW HANOVER TOWNSHIP; Paradise Watchdogs; Beverly Ream, Individually, and as a Representative of the Paradise Watchdogs**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, New Hanover Township, Appellant.**

No. 92–1589.

United States Court of Appeals, Third Circuit.

Argued, Jan. 25, 1993.

Decided March 16, 1993.

Albert J. Slap (argued), Mary Ann Rossi, Samuel H. Israel, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for appellant.

Seth M. Barsky, Dirk D. Snel, Martin W. Matzen, (argued), Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Vicki A. O'Meara, Acting Asst. Atty. Gen., Michael Baylson, U.S. Atty., Joan K. Garner, Asst. U.S. Atty., Philadelphia, PA (Barry Gale, Office of Counsel, U.S. Army Corps of Engineers, of counsel), for appellees.

Before: GREENBERG, ROTH and LEWIS, Circuit Judges.

## OPINION OF THE COURT

LEWIS, Circuit Judge.

This case involves a township's objection to the Army Corps of Engineers' (the "Corps' ") permitting a municipal waste landfill project to proceed under a general, rather than an individual, permit. Because we find that the case is not ripe, we will vacate the district court's judgment for the Corps and remand with instructions to dismiss. *See Taylor Investment, Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1290 (3d Cir.1993).

### I.

The Federal Water Pollution Control Act (later renamed the Clean Water Act and referred to herein by that name or the "Act"), 33 U.S.C. §§ 1251 *et seq.,* was enacted in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act set forth a "national goal that the discharge of pollutants into the navigable waters be eliminated by 1985." 33 U.S.C. § 1251(a)(1). *See generally Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc.,* 913 F.2d 64, 68 (3d Cir.1990).

In order to achieve this and other goals, the Act prohibits all persons from discharging pollutants into navigable waters unless they have obtained or are operating within the strictures of certain permits. 33 U.S.C. §§ 1311(a), 1341 *et seq.* A person who wants to discharge dredged or fill material into navigable waters may either obtain an individual permit on a case-by-case basis or operate under one of many general permits which have been issued on state, regional or nationwide bases. 33 U.S.C. §§ 1344(a), (e). The Act authorizes the Secretary of the Army, acting through its engineers, to issue both individual and general permits. 33 C.F.R. § 330.2(f).

The Corps has issued 26 nationwide permits under the Clean Water Act. In other words, the regulations implementing the Clean Water Act provide that activities falling within one or more of 26 categories "are hereby permitted provided they meet the conditions listed in paragraph (b) ... and, where required, comply with the notification procedures [set forth in another section of the regulations]." 33 C.F.R. § 330.5.

Thus, if a person's proposed discharge activities fall within one of the listed categories, no individualized inquiry into those activities is necessary. He or she may simply operate under the nationwide permit without informing the Corps in advance unless the nationwide permit in question requires advance approval from the Corps, although in practice, the Corps' concurrence as to applicability of a nationwide permit is often sought. *See* 33 C.F.R. §§ 320.1(c), 325.2(c)(2). In contrast, if a person's proposed activities do not fall within a general permit category, he or she must obtain an individual "section 404" permit to undertake the desired activity. 33 U.S.C. § 1344. This is a longer, more comprehensive procedure. *See* 33 C.F.R. §§ 323, 325.

### II.

New Hanover Corporation ("NHC") seeks to use land located within New Hanover Township (the "Township") as a municipal waste landfill. It has applied to the Pennsylvania Department of Environmental Resources ("PADER") for the state permits required to do so. This case involves NHC's intention to rely upon a nationwide permit to satisfy the Clean Water Act in constructing and operating that landfill.[1]

In September, 1990, the Corps approved NHC's request to operate under nationwide permit 26 ("NWP 26"). This permit allows "[d]ischarges of dredged or fill material into [[n]on-tidal rivers, streams, and their lakes and impoundments, including adjacent wetlands, that are located above the headwaters] except those which cause the loss or substantial adverse modification of 10 acres or more

---

1. Although a nationwide permit allows certain activities without specific prior approval, in this case the Corps inquired as to NHC's intentions, which in turn prompted NHC to seek a determination that its proposed activities would fall within a nationwide permit.

of such waters of the United States, including wetlands." 33 C.F.R. § 330.5(a)(26). Persons engaged in discharges which cause the loss or substantial adverse modification of 1 to 10 acres of wetlands must notify their district engineer before discharge, but no pre-discharge notification is required for discharges causing the loss or substantial adverse modification of less than one acre of wetlands. *Id.*

The Corps approved NHC's operating under NWP 26 because it found that NHC's activities would result in the loss or substantial modification of only .96 acres of wetlands. NHC must still obtain a water quality certificate from the state in which the discharge will originate before work may begin, however. 33 C.F.R. §§ 330.5(b)(11), 330.9(a). *See also* 33 U.S.C. § 1341; app. vol. II, 565a, 572a–577a.

The Township, a citizens' group and a citizen of the Township brought suit, alleging in part that the Corps erred in permitting NHC to operate under NWP 26 rather than requiring that NHC obtain an individual section 404 permit. The parties filed cross-motions for summary judgment, and the district court granted the Corps' motion. The Township alone filed a timely appeal to this court. Because the case is not ripe, however, we will vacate the district court's order.

### III.

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court's decision regarding ripeness is plenary. *Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 535 n. 8 (3d Cir.1988).

■ Dismissing an appeal from an administrative decision as unripe "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also ... protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties." *Abbott Laboratories, Inc. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). *See also CEC Energy Co., Inc. v. Public Service Comm'n of the Virgin Islands,* 891 F.2d 1107, 1109 (3d Cir.1989); *Wilmac Corp. v. Bowen,* 811 F.2d 809, 812 (3d Cir.1987). In determining whether this case involves an abstract disagreement or a dispute which requires judicial intervention, the court should examine whether the issues are fit for judicial resolution and whether withholding judicial resolution will result in hardship to the parties. *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515; *Wilmac Corp.,* 811 F.2d at 812. *See also CEC Energy,* 891 F.2d at 1110 (listing factors to consider in assessing finality).

### A. *Fitness for Judicial Resolution*

■ Some factors appear to suggest that this case may be fit for judicial resolution. For example, the Corps' decision represents its final position on the question of the extent of the wetlands involved, thus implying that review at this time is proper.[2] *Cf. CEC Energy,* 891 F.2d at 1110. Similarly, review of the Corps' decision would involve a pure legal question, not further factual development, thus indicating that this may be an appropriate time for a court to step in. *Id.*

As we stated in *CEC Energy,* however, "not all decisions that represent an agency's last word on an issue are final for purposes of review.... Rather, finality is to be interpreted in a pragmatic way." *Id., citing Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. A pragmatic view of the facts mandates a decision that this case is not ripe for review. First and foremost, the Corps' decision has no immediate impact on the Township. NHC may not proceed with its landfill project until it obtains a section 401 water quality certificate from the PADER. Thus, no one will experience any impact stemming

---

2. Alternatively, it is possible to conceive of the agency action which is relevant to this case as being not merely the Corps' action but instead the combined action of both the PADER and the Corps, because the statutory scheme contemplates both state and federal agency action before work may proceed.

from the Corps' decision until and unless PADER issues a water quality certificate.

Further, immediate judicial review of the Corps' decision will not necessarily speed enforcement of the Clean Water Act. *See CEC Energy*, 891 F.2d at 1110. Should we review the Corps' decision and decide in the Township's favor, we would presumably order NHC to begin the section 404 permit procedure. If, during that process, the PADER denies NHC a water quality certificate, we would have needlessly interposed an extra layer of administrative proceedings in this matter. *See Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1086 (3d Cir.1989) (Becker, J., concurring). The result would neither speed enforcement of the Act nor benefit either party.

## B. *Hardship to the Parties*

Put simply, no one will suffer hardship if we refuse to hear this case at this time. "Although a party need not wait until a threatened hardship becomes a reality, the hardship must be certain and impending to obtain preventive relief." *CEC Energy*, 891 F.2d at 1111. NHC cannot begin construction or operation of the landfill project until the state permits are obtained. Because Pennsylvania may not even issue a water quality certificate, we certainly cannot say that any hardship the Township alleges is certain and impending.

Instead, the effects of the Corps' deciding that NHC may proceed under NWP 26 will not be felt in a concrete way unless and until the PADER grants NHC a water quality certificate. If we were to hear this case and rule for the Township, the Corps and NHC may be put through an unnecessary, complex section 404 permit proceeding. After all, if the PADER does not grant NHC a water quality certificate, the question of whether the Corps erred in deciding that NHC's actions would come within NWP 26 is of no moment.

This case resembles *Suburban Trails, Inc. v. New Jersey Transit Corp.*, 800 F.2d 361 (3d Cir.1986). In *Suburban Trails*, we ruled that a challenge to a state agency's decision regarding the allocation of new buses among transportation companies was not ripe be-cause a federal agency possessed veto power over the state agency's decision. *See Suburban Trails*, 800 F.2d at 367 (in cases presenting a tripartite controversy, agency action may not be ripe until the third party takes action). In this case, Pennsylvania is empowered by the Clean Water Act to set more stringent water quality standards than those set by the Act and its regulations. *See 33 U.S.C. § 1370; United States v. Marathon Development Corp.*, 867 F.2d 96, 99–100 (1st Cir.1989). Pennsylvania may or may not be in a position to reconsider the Corps' quantification of the wetlands NHC's activity will affect, but in practical terms its ability to prevent or permit NHC's proceeding has the effect of veto power over the wetlands determination.

Thus, *Suburban Trails* is, at the least, instructive, and our decision that this case is not ripe is consistent with it. The results of the Pennsylvania process cannot be predicted. Because neither the Township nor anyone else will experience any effects from the Corps' decision unless and until Pennsylvania grants a water quality certificate, when fill work can begin, this case is not ripe. The Township (or others) should wait until Pennsylvania makes its decision and then, assuming that injury is impending, file suit.

## IV.

In conclusion, we will vacate the district court's grant of judgment to the Corps and remand this case to the district court so that the district court may dismiss it as being unripe.