TEMPLE UNIVERSITY OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION ON BEHALF OF ITS TEMPLE UNIVERSITY CLINICAL FACULTY PRACTICE PLANS TEMPLE UNIVERSITY SCHOOL OF MEDICINE,

v.

*Janet REHNQUIST, Inspector General, Department of Health and Human Services; *Tommy G. Thompson, Secretary, Department of Health & Human Services

Temple University–of the Commonwealth System of Higher Education, on behalf of its Temple University Clinical Facility Practice Plans ("Temple"), Appellant

No. 01–3862.

United States Court of Appeals, Third Circuit.

Argued June 25, 2002.

Filed Aug. 20, 2002.

Beth C. Koob, Temple University Health System, Office of Counsel, Arlin M.

* {Substituted Pursuant to F.R.A.P. 43(c)}

Adams (Argued), Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, Ronald H. Clark, D. Jacques Smith, Arent Fox Kintner Plotkin & Kahn PLLC, Washington, D.C., Co–Counsel for Appellant.

Robert D. McCallum, Jr., Assistant Attorney General, Patrick L. Meehan, United States Attorney, Douglas N. Letter, Christine N. Kohl (Argued), Attorneys, Appellate Staff, Washington, D.C., Counsel for Appellees.

Before ALITO, AMBRO, and GARTH, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

This is an appeal from the District Court's final order of dismissal. Because we write for the parties only, we do not set out the background of this case.[1]

We find dispositive two doctrines—finality and ripeness—that the courts "frequently mingle" in deciding whether judicial review is appropriate. *See* Wright, Miller & Cooper, 16 Federal Practice & Procedure: Jurisdiction 2d § 3942 at 770–71 (1996); *see also e.g., Solar Turbines Inc. v. Seif,* 879 F.2d 1073, 1080 (3d Cir. 1989). Because we believe that the decision to initiate an audit does not constitute final agency action and that this appeal is unripe for review, we affirm the District Court's dismissal under Rule 12(b)(1) for lack of jurisdiction.

### I.

The first issue is whether the OIG's decision to conduct an audit of Temple's Medicare claims is "final agency action" reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

1. This Court exercises plenary review of a district court's dismissal of a complaint on the ground that the APA bars review. *See*

### A.

The District Court found persuasive two cases involving challenges to the PATH initiative. *See Association of Am. Med. Colleges v. United States,* 217 F.3d 770 (9th Cir.2000) [hereinafter *AAMC*]; *Greater N.Y. Hosp. Ass'n v. United States,* No. 98 Civ 2741, 1999 WL 1021561 (S.D.N.Y. Nov. 9, 1999). In *Greater New York Hospital,* a group of hospitals sued for declaratory and injunctive relief, seeking to prevent planned PATH audits at hospitals in the greater New York area. Although the hospital association disputed that the hospitals' Medicare carrier's publication represented official standards, the OIG concluded that the carrier had informed its hospitals of the "physical presence" requirement for billing attending physicians' services under Medicare Part B. Consequently, the OIG determined that those hospitals would be subject to PATH audits. The court concluded that, because the audits do not establish definitively the liability of the hospitals and because the agencies have not completed their decision making process regarding the audits, "the announced PATH audits do not constitute a final agency decision by OIG or HHS," *id.* at *5. Rejecting the notion that the audit was final because it subjected the hospitals to potential liability under the False Claims Act, the court concluded that "too much conjecture is required for the court to conclude that [plaintiffs] will suffer injury from the audits," *id.* at *6, and that review of the agency's decision to conduct the PATH audit could be obtained if and when the plaintiffs incurred liability stemming from the PATH audits. *See id.*

In *AAMC,* the court dealt with slightly different facts than the *Greater New York*

*American Disabled for Attendant Programs Today v. United States Dep't of Hous. & Urban Dev.,* 170 F.3d 381, 382 & n. 2 (3d Cir.1999).

*Hospital* case. The *AAMC* plaintiffs did not object to a *specific* PATH audit because it violated agency guidelines, but rather challenged—as violative of the APA and Medicare Act—numerous standards employed during the PATH audit process generally. *See AAMC,* 217 F.3d at 773. The district court dismissed the action for lack of subject matter jurisdiction on defendant's motion under Rule 12(b)(1), ruling that the action was premature because there had been no final agency action, plaintiffs had adequate alternative remedies, and the issues were not ripe for adjudication. The Second Circuit affirmed on the ground that there was no case or controversy under Article III of the Constitution and ordered the case dismissed without prejudice.

The District Court here found these two cases comparable to the instant appeal. First, in both *Greater New York* and here, OIG concluded that the Medicare carrier had informed the hospitals of the physical presence requirement. Second, although Temple challenges a narrower application of the PATH audit than the *AAMC* plaintiffs, the challenge seeks the very same relief, namely a determination of its rights with respect to a government investigation. Therefore, the District Court concluded that the reasoning of the two cases properly informed the decision in this case.

Apart from analogizing the present case to the two cases mentioned, the District Court also analyzed the case under the factors outlined in this Court's decision in *CEC Energy Co., Inc. v. Public Service Commission of the Virgin Islands,* 891 F.2d 1107, 1110 (3d Cir.1989), namely, "(1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate judicial review would speed enforcement of the relevant act."

First, the District Court concluded that the decision to audit the hospital did not constitute the definitive position of the agency in this matter, because a PATH audit is only the beginning of a process that may or may not end in the agency's decision to pursue an action under the FCA. Second, although initiating a PATH audit necessarily requires the hospital's immediate compliance, it does not carry the same status of law as the lodging of an FCA complaint. Third, the initiation of the PATH audit would not have an immediate impact on the hospital's daily operations, because the very nature of the audit is a review of past conduct not a change in present or future conduct. Fourth, the dispute does not concern a pure question of law. Fifth, plaintiff's pre-enforcement challenge would not serve to speed enforcement of the statute, but rather would frustrate the agency's enforcement efforts and create an unnecessary burden for the courts. For all of these reasons, the District Court dismissed the case for lack of subject matter jurisdiction, holding that the initiation of a PATH audit was not "final agency action" under the APA.

### B.

The APA provides for judicial review of a final agency action for which there is no other adequate remedy in court. To determine whether an agency's action is final, "the core question is whether the agency has *completed its decisionmaking process,* and whether the result of that process is one that will *directly affect the parties." Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d

636 (1992) (emphasis added). The Supreme Court has observed that "[t]he cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (publication of certain regulations by the Commissioner of Food and Drugs was held to be final agency action subject to judicial review in an action for declaratory judgment brought prior to any government action for enforcement).

The Supreme Court in *FTC v. Standard Oil Co.,* 449 U.S. 232, 244 n. 11, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), held, however, that the issuance of a complaint was materially different from the regulation at issue in *Abbott Labs.* In *Standard Oil,* the FTC issued a complaint against several major oil companies, alleging that it had "reason to believe" that the companies were violating § 5 of the Federal Trade Commission Act, which prohibits unfair methods of competition or unfair and deceptive acts or practices in commerce. While the case was pending before an ALJ, Standard Oil challenged the action in federal court. The Court of Appeals reversed the District Court's dismissal, holding that the issuance of the complaint was "final agency action" under § 10(c) of the APA. The Supreme Court reversed, holding that the issuance of the complaint served only to initiate the proceedings and had no legal force comparable to that of the regulation at issue in *Abbott Labs.* Moreover, the Commission's issuance of the complaint was not a definitive ruling or regulation and it had no legal force or practical effect on the company's daily operations other than the disruptions that accompany any major litigation. The Court concluded that these pragmatic considerations counseled against the conclusion that the issu-

ance of the complaint was "final agency action." *Standard Oil,* 449 U.S. at 243.

### 1.

██ We agree with the District Court that the mere initiation of the PATH audit cannot be characterized as "definitive" or conclusive agency action. Although the plaintiff attempts to characterize the *decision* to begin an audit as definitive, the initiation of the PATH audit is merely the *beginning* of the investigative process, which may or may not end in the agency's decision to pursue an action under the FCA. *See e.g., Aerosource, Inc. v. Slater,* 142 F.3d 572, 579–80 (3d Cir.1998) (holding that safety advisory reports published by the FAA were not final orders "because their conclusions were tentative and indicative of an on-going investigation"); *CEC,* 891 F.2d at 1110 (holding that a public service commission's order announcing that it had jurisdiction to investigate a utility contract was not final agency action, because an investigation is merely "a prerequisite to definitive agency action"); *West Penn Power Co. v. Train,* 522 F.2d 302, 311 (3d Cir.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976) (pre-*Standard Oil* ) (holding that a Notice of Violation of the Clean Air Act was not final agency action, reviewable under the APA, because its only effect was "to make the recipient aware that … regulations are not being met and to trigger the statutory mechanism for informal accommodation which precedes any formal enforcement measures"); *Mobil Exploration & Producing U.S., Inc. v. Department of the Interior,* 180 F.3d 1192, 1198–99 (10th Cir.1999) (agency request that firm retain records for purposes of audit was not final agency action); *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994) (agency's initiation of investigation is not final agency action).

For this reason, the initiation of the PATH audit is *less* definitive than the complaint issued by the FTC in *Standard Oil*, which was held *not* to be final agency action. As explained above, the administrative complaint in *Standard Oil* "represent[ed] a threshold determination that further inquiry [wa]s warranted and that a complaint should initiate proceedings." 449 U.S. at 241. Here, as the defendants correctly state, the initiation of the PATH audit does not even amount to a determination of "reason to believe" that Temple is in violation of the Medicare Act, let alone any definitive determination of Temple's liability. *Standard Oil* rejected the same kind of argument that the plaintiff advances here, namely, that the *decision* to initiate an audit amounts to definitive agency action: "[T]he extent to which the respondent may challenge the complaint and its charges proves that the averment of reason to believe is not 'definitive' in a comparable manner to the regulations in *Abbott Laboratories*." 449 U.S. at 241. Similarly here, if the PATH audit reveals Medicare violations and the government pursues enforcement action, then Temple will have an opportunity for judicial review at that time. The mere initiation of the audit does not mean the agency has definitively taken a position against Temple; it is merely the beginning of an investigation.

### 2.

We also find that the defendants are correct that the plaintiffs have failed to show that the initiation of the PATH audit will cause the sort of immediate and direct impact on its day-to-day operations that is relevant in the present context. Although Temple will undoubtedly experience a burden in responding to OIG's document requests, *Standard Oil* unequivocally rejected the argument that such a burden is sufficient to render an investigatory proceeding final and reviewable under the APA. *Standard Oil*, 449 U.S. at 242. In short, the burden of responding to an agency's investigatory requests is not the kind of burden that turns an otherwise unreviewable action into a final action under the APA.

### 3.

Finally, the plaintiff argues that the Rabb Letter and OIG's PATH audit guidelines "promulgated" a binding rule or regulation that were violated when the Inspector General decided to commence a PATH audit at Temple, and that such action is therefore arbitrary and capricious and should be set aside under the APA. The defendants respond that neither the PATH audit guideline nor the Rabb Letter is, or purports to be, a "rule" or binding norm. Even so, they argue, OIG complied with the guidelines, giving Temple numerous opportunities to proffer evidence of conflicting guidance from its carrier. Pursuant to its guidelines, OIG reviewed the evidence submitted by Temple and found no basis for excusing Temple from the audit. Finally, the defendants argue that even if OIG had violated its own "regulations," the limited exception to the finality requirement invoked by Temple applies only to agency action in violation of statutory authority.

Even assuming that the Rabb Letter and OIG's PATH audit guidelines constitute binding rules, the plaintiffs have not proven that the OIG violated those guidelines. Under the OIG guidelines (which were repeated in the Rabb Letter), "a hospital selected for a PATH audit will have an opportunity to show that it received guidance from the [carrier] which, in the hospital's view, contradicts the physical presence standard articulated above. *The decision whether clear guidance was given by the carrier will be made by OIG.*"

We agree with the District Court that Temple was given multiple opportunities to show that it had received conflicting guidance from Xact, and notwithstanding these multiple opportunities, it failed to convince OIG. Temple's evidence of allegedly conflicting guidance consisted of the following: (1) Xact's 1983 directive stating that "[a] physician's countersignature of a note entered [on a patient's medical chart] by a resident or nurse is not evidence that a Part B covered service was provided unless the note indicates that the physician was present" (App. at 188); (2) a 1995 report on an audit of 14 patients' records in 1994 (App. at 197–212); and (3) a 1996 Medicare hearing officer decision based on that same audit (App. at 229–32). OIG reexamined Xact's guidance, reviewed the allegedly conflicting documents submitted by Temple, and reaffirmed its conclusion that Xact's policy was to require a physician to have been physically present at the time service was rendered in order to claim Medicare B reimbursement. Although Temple may disagree with OIG's conclusion, Temple cannot credibly argue that OIG violated its own rules.

For the foregoing reasons, we hold that there has been no "final agency action" and, thus, that this case is unreviewable at this time under the APA.

## II.

The second albeit related issue is whether the OIG's determination to conduct an audit is ripe for review. The District Court concluded that the plaintiff's complaint was neither fit for judicial review nor would the parties suffer the requisite hardship if judicial consideration were withheld. First, the District Court held that because the agency's decision was not yet final, judicial intervention would inappropriately interfere with further agency action. Second, the District Court concluded that the plaintiff failed to show how the challenged action would force it to modify or alter its behavior in order to avoid future adverse legal consequences. Although the plaintiff argues that without judicial intervention it will be forced to endure a costly and disruptive PATH audit, the District Court held that such costs are not the type of direct and immediate change required to establish ripeness.

### A.

Traditionally, courts have been reluctant to apply "injunctive and declaratory judgment remedies [which] are discretionary ... to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Labs.*, 387 U.S. at 148. The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also [ ] protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148–49. This is so because awaiting the termination of agency proceedings may obviate all need for judicial review. *See Standard Oil*, 449 U.S. at 244 n. 11.

We must assess two prongs in the ripeness inquiry: "*both* the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149. First, the fitness prong requires an examination of whether the agency action is final and whether the issue is "purely legal." *Abbott Labs.*, 387 U.S. at 149. Here, the agency action is decidedly not final for all of the reasons set forth above.

Second, the Supreme Court outlined the hardship prong in *Abbott Labs* when it held that a pre-enforcement challenge to a

regulation may be ripe where the impact of the regulation is "sufficiently direct and immediate." *Id.* at 152. In that case, at issue was a regulation requiring drug manufacturers to designate the generic name of a drug on labels and advertisements where the drug trade name was printed. Failure to comply with the regulation resulted in product seizure as well as severe criminal and civil penalties. The Court described the plaintiffs' dilemma: " '[e]ither they must comply with the every time requirement and incur the costs of changing over their promotional material and labeling or they must follow their present course and risk prosecution.' " *Abbott Labs.*, 387 U.S. at 152. The Court concluded:

> Where the legal issue presented is fit for judicial resolution, and where a regulation requires an *immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance,* access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some unusual circumstance, neither of which appears here.

*Id.* at 153 (emphasis added). Courts typically read this rule to apply where regulations require changes in *present conduct* on threat of future sanctions. *See e.g., Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (plaintiff is outside *Abbott Labs* rule where agency plan does not "force [plaintiff] to modify its behavior in order to avoid future adverse consequences, as, for example, agency regulations can sometimes force immediate compliance through threat of future sanction").

### B.

■ Plaintiffs urge us to find the case at bar similar to *A.O. Smith Corp. v. FTC,* 530 F.2d 515 (3d Cir.1976). In that case, the Court held that the hardship prong had been satisfied. In the early 1970s, the FTC adopted a resolution requiring Line of Business Reports ("LB Reports") that would facilitate the public reporting of corporate financial information. The LB Reports required detailed sales and cost data broken down into line of business categories as defined by the Commission. Pursuant to the resolution, the Commission ordered 345 of the nation's largest companies to complete and file LB Reports within 150 days of receipt or face penalties. This Court held that the companies were placed in an immediate and real dilemma: if they chose to comply with the orders, they would have to commit substantial resources—both in terms of money and manpower—to develop accounting techniques necessary for compliance and, as a result, would suffer loss of profits; alternatively, if they refused to comply, they would risk civil fines for noncompliance. Because the consequences of noncompliance were found to be serious and the effects of compliance on primary day-to-day operations were found to be immediate, we held that the hardship prong was satisfied. At the very least, we found that the orders necessitated changes in internal record keeping and accounting, which the Supreme Court has held may entail a sufficiently direct impact to conclude that the case is ripe.

Defendants, on the other hand, suggest that this case is similar to *AAMC,* where the Ninth Circuit held that the hardship prong was not met in a similar challenge to PATH audits. There, the Ninth Circuit held that the plaintiffs' case fell outside the *Abbott Labs* rule "since the PATH initiative is not a final rule and it relates to liability for *past* billing practices rather than requiring a costly change in present conduct." *AAMC,* 217 F.3d at 783 (emphasis added). The court recognized that the *AAMC* plaintiffs might be faced with a

similar *Abbott Labs* dilemma: if they entered into settlement agreements predicated on audit standards that exceed the requirements of the Medicare Act and regulations, they would simultaneously waive their right to challenge the audit standards in court; on the other hand, if they refused to settle, they faced potentially ruinous liability under the False Claims Act. But, noting that the rule in *Abbott Labs* has been "carefully circumscribed to regulations that pose an *immediate dilemma*," the Ninth Circuit concluded that no matter how likely the plaintiffs thought a settlement/False Claims Act litigation choice might be, the choice was not yet before them. Because the PATH audit reached only *past* conduct, nothing but participation in the audits was demanded of them at the time of that appeal. 217 F.3d at 783–84.

Here, Temple faces no immediate and real dilemma like that faced by the plaintiffs in *Abbott Labs* or *A.O. Smith*. The mere initiation of a PATH audit will not force Temple to change its *present* conduct on threat of future adverse consequences, and Temple is certainly not in the position of the *A.O. Smith* plaintiffs, who were forced to *develop* new accounting techniques in order to comply with the resolution. All that Temple must do is cooperate with the PATH audit, which does entail responding to production requests. But *Standard Oil* clearly states that this burden "is different in kind and legal effect from the burdens" involved in *Abbott Labs*. 449 U.S. at 242; *see also Ohio Forestry*, 523 U.S. at 735 (litigation cost saving is insufficient to meet hardship prong where case is otherwise unripe). For all of these

reasons, the District Court was correct to conclude that Temple has not met the burden of proving that its case is ripe for review before this Court.

We have considered all of the plaintiff's arguments and see no basis for reversal.[2] The judgment of the District Court is therefore AFFIRMED.

We cannot conclude, however, without noting the warnings made by Temple regarding the consequences that a PATH audit may have for the patients served by Temple Hospital. Temple Hospital is essential to the health of many in the community it serves. We request that counsel for the appellees bring the statements of Temple's counsel to the personal attention of the Inspector General and Secretary so that the PATH audit can be conducted in a way that does not prevent the delivery of vital health services. Our decision does not foreclose the opportunity for plaintiff to seek judicial review if a health emergency were to develop.

AMBRO, Circuit Judge, concurring.

The District Court gave three reasons why it lacks subject matter jurisdiction over Temple's action: (1) the OIG's action was not final; (2) Temple has an adequate alternative legal remedy (*i.e.*, in response to a False Claims Act action, it may defend on the ground that it is a state agency and has received conflicting guidance); and (3) the challenged action is one committed to agency discretion under 5 U.S.C. § 701(a)(2).[3] I agree with the District Court on (2) and (3) and agree with the majority that "Temple cannot credibly argue that OIG violated its own rules."[4] The

---

**2.** In light of our holding that there is no final agency action as required for review under the APA, Temple's argument that its APA challenge may be determined in the context of a separate subpoena enforcement proceeding is also unavailing.

**3.** The District Court also concluded that the OIG's action was not ripe for review.

**4.** Temple seems to believe that its claim of conflicting guidance issues it a free pass from a PATH I audit. That is not the case, for at

majority, however, bases its affirmance on there being no final order and the issue not being ripe for review. But while I would affirm the District Court's judgment, I believe that the OIG's decision to impose a Path I audit was a final one under our *CEC Energy Co. v. Public Serv. Comm'n of the V.I.* decision, 891 F.2d 1107, 1110 (3d Cir.1989), and that the issue is ripe for review.

The five factors we consider to determine if an agency action is final are: (1) is the decision the agency's definitive position on the question; (2) does the decision have the status of law, requiring immediate compliance; (3) does it have an immediate effect on the day-to-day operations; (4) is it a pure question of law, requiring no further factual development; and (5) and will immediate judicial review speed enforcement of the act? *Id.* I believe that these factors, taken together, weigh in favor of finding final agency action here.

The first factor that guides our inquiry is whether the Path I audit represented the definitive position of the agency. The OIG's decision to impose the Path I audit was not merely the initiation of an investigation that could culminate in an enforcement action, as the majority implies. On the contrary, it represents the OIG's final and definitive position on the issue of whether to begin an audit.

Next, we examine whether the decision has the status of law requiring immediate compliance. Neither Temple nor the OIG has asserted that Temple has any option except to comply with the Path I audit, should this suit fail. Temple cannot risk its Medicare funding by not complying.

Third, we examine whether the decision has an immediate effect on Temple's day-to-day operations. The majority finds the

burden the Path I audit imposes on Temple to be insignificant. However, Temple asserts that it would "sustain irreparable injury" were the audit to go forward, describing the required locating and copying of "tens of thousands of documents and the need for an already overtaxed staff to respond to the OIG's requests." Given that Temple is a relatively small institution, the audit must have some effect on its daily operations.

Fourth, we determine whether a pure question of law exists. Here the question is whether the OIG violated its own rules, as articulated in the Rabb Letter, by going forward with the audit. As adverted to above, I would answer no. But whether an agency complied with its own guidelines is still a pure question of law, which weighs in favor of finding final agency action. In short, I believe that the majority and I agree that this is an easily resolved pure question of law: the OIG did not violate its guidelines by initiating the Path I audit.

Finally, we consider whether immediate judicial review would resolve the issue. Here, judicial review not only could resolve the issue, but in effect has resolved it. The majority considered the question of law presented and concluded, quite rightly, that the OIG did not violate its guidelines by imposing a Path I audit on Temple.

In this case I conclude that "the agency has completed its decision making process, and ... the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). After an examination of the above factors, I believe the decision to impose a Path I audit to be final agency action.

---

most such a claim is a "time out" while the OIG evaluates that claim. Temple received

its time out, the OIG made its decision, and the audit should proceed.

I likewise would refrain from basing our affirmance of the District Court on ripeness grounds. While finality and ripeness analyses often overlap, ripeness, in addition to considering finality of the agency's decision, also takes into account whether the issue is a legal one, whether it is better reviewed after more development, and the hardship to the parties if review is postponed, all in the context of avoiding premature interference with agency action. *Mountain States Tel. & Tel. Co. v. F.C.C.*, 939 F.2d 1021, 1028 (D.C.Cir.1991); 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3942, at 769–71 (2d ed. 1996). I believe that these factors weigh in favor of concluding that the OIG's action is ripe for review in the context of the finality reasoning noted above.

I thus respectfully concur in the judgment.